**Opinion issued March 27, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-01090-CV

————————————

**EUGENE V. MCMAHON, Appellant**

**V.**

**MARCIA ZIMMERMAN, INDIVIDUALLY, AND THE ZIMMERMAN LAW FIRM, LLP, Appellees**

---

**On Appeal from the 281st District Court
Harris County, Texas
Trial Court Case No. 1137680**

---

## O P I N I O N

This appeal arises out of a legal malpractice suit by Eugene McMahon against Marcia Zimmerman and the Zimmerman Law Firm (collectively Zimmerman) concerning Zimmerman's representation of McMahon in his divorce. McMahon contended that Zimmerman's negligent legal advice caused him to

agree to assume nearly all of the community debt, resulting in approximately $300,000 in damages to him. Zimmerman asserted counterclaims, including breach of contract for failure to pay attorney's fees in the divorce proceeding.

The trial court granted Zimmerman's motion to strike portions of McMahon's expert witness's report and Zimmerman's no-evidence motion for summary judgment on McMahon's legal malpractice claim. Following a bench trial on the remaining counterclaims, Zimmerman obtained a judgment against McMahon for breach of contract and was awarded $6,000 in attorney's fees.

In three issues, McMahon contends that the trial court erred by (1) striking portions of McMahon's expert witness's report, (2) granting Zimmerman's no-evidence motion for summary judgment on the legal malpractice claim, and (3) awarding $6,000 in attorney's fees to Zimmerman on her breach-of-contract claim without any testimony from Zimmerman's counsel segregating the fee for defense of the legal malpractice claim from the fee for prosecuting the breach-of-contract claim.

We affirm.

## Background

McMahon hired Zimmerman to represent him in a divorce. Before the divorce was finalized, Zimmerman withdrew her representation of McMahon. A

2

short time later, McMahon and his wife entered into an Agreed Final Decree of Divorce. The decree was not included in the appellate record.

After his divorce was final, McMahon sued Zimmerman for legal malpractice. McMahon alleged that Zimmerman's negligent representation of him caused him approximately $300,000 in damages because the division of community property under the terms of the agreed divorce decree was inequitable, leaving McMahon with the full amount of the community debt ($615,583) while giving his wife $30,000 in assets. McMahon retained an expert, Thomas Oldham, "to testify on the elements of causation and damages regarding [his] claims for legal malpractice against Defendants."

Oldham is a law professor at the University of Houston Law Center. His affidavit states that "the basic issue in the McMahon divorce was how to allocate the $600,000 in community debt that had been incurred by the parties." Oldham offered the following opinions:

> If the issues had been litigated in the McMahon divorce . . . the court would have asked [the wife] to bear a significant portion of the debt, particularly in light of her substantial premarital savings that she retained after the divorce.
>
> * * *
>
> In my expert opinion . . . it was negligent for Ms. Zimmerman to recommend to Mr. McMahon that he accept the proposed settlement whereby he would be responsible for <u>all</u> the community debt. This proximately caused Mr. McMahon damage, because, after receiving the recommendation from Ms. Zimmerman that he agree to the proposed settlement, I have been told that he did agree to it and . . .

3

Mr. McMahon thereby became solely responsible for the $599,000 in community debt that accrued during the marriage.

Zimmerman filed a motion to exclude Oldham's expert testimony, arguing that (1) Oldham's opinions were unreliable; (2) he impermissibly sought to testify about "pure matters of law;" and (3) he was not adequately qualified. Zimmerman also filed a no-evidence motion for summary judgment on McMahon's legal malpractice claim. After a hearing on both matters, the trial court entered an order striking key portions of Oldham's testimony, including the opinions quoted above, and an order granting Zimmerman's no-evidence motion for summary judgment on the legal-malpractice claim.

Zimmerman proceeded to trial on her counter-claims for breach of contract and defamation. At the conclusion of the bench trial, the trial court entered a final judgment for Zimmerman on the breach-of-contract claim, awarding her $3,107 in damages and $6,000 in attorney's fees. McMahon timely appealed.

**Expert Witness**

McMahon contends that the trial court erred in striking portions of his expert's affidavit. The order striking Oldham's opinions specifically states that the trial court sustained Zimmerman's objections to the opinions "based on speculation, relevance, reliability, and matters purely of law."

## A.  Standard of review

A trial court's determination of whether an expert's opinion is admissible under rule 702 of the Texas Rules of Evidence is reviewed for an abuse of discretion. *See* TEX. R. EVID. 702; *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718–19 (Tex. 1998); *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800–01 (Tex. 2006). Under this standard, the trial court has broad discretion in deciding whether to admit or exclude expert testimony. *Wilson v. Shanti*, 333 S.W.3d 909, 913 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). The trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *See Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex. 1998). When a trial court excludes an expert's testimony on multiple grounds, we will affirm the ruling so long as any one of the bases is legally valid. *Buls v. Fuselier*, 55 S.W.3d 204, 208 (Tex. App.—Texarkana 2001, no pet.) ("Because the trial court did not specify the grounds on which it excluded Naples' testimony, we will affirm the trial court's ruling if the ruling is correct on any theory supported by the pleadings and evidence.").

## B.  Rule 702's requirements

Under Rule 702, an expert's opinion is admissible if it satisfies three requirements: the expert is qualified, the opinion is sufficiently reliable under *Robinson* and its progeny, and the testimony assists the trier of fact.  TEX. R. EVID.

702; *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). The reliability inquiry also requires satisfaction of three requirements— "namely, the expert's methodology, foundational data, and whether too great an analytical gap exists as the expert connects the foundational data or methodology with the opinion." *Wilson*, 333 S.W.3d at 913; *see also Harris Cnty. Appraisal Dist. v. Hous. 8th Wonder Prop., L.P.*, 395 S.W.3d 245, 253–54 (Tex. App.— Houston [1st Dist.] 2012, pet. denied) ("As to reliability, the court must examine the expert's methodology, foundational data, and whether too great an analytical gap exists between the data and methodology, on the one hand, and the expert's opinions, on the other."). Two other evidence rules may also be implicated in a challenge to an expert's opinion: Rule 402, which requires the evidence to be relevant, and Rule 403, which permits a trial court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 402, 403. Two of these requirements are at issue here. The trial court ruled that professor Oldham's testimony was not relevant and was not reliable.

There are also certain requirements of expert testimony adopted by the common law. One of these is at issue here: the trial court ruled that the opinion violated the well-established rule that expert testimony is improper on "pure questions of law." *See, e.g.*, *Fleming v. Kinney ex rel. Shelton*, 395 S.W.3d 917, 928 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (holding that a legal

6

expert may not testify on "pure questions of law.") (citing *Greenberg Traurig of N.Y. v. Moody*, 161 S.W.3d 56, 94 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

The admissibility of Professor Oldham's opinion is a threshold question because both parties acknowledge that expert testimony is required on whether Zimmerman's conduct constituted legal malpractice and whether Zimmerman's conduct proximately caused McMahon harm. *See Alexander v. Turtur & Assocs.*, 146 S.W.3d 113, 119 (Tex. 2004) (expert testimony necessary in attorney malpractice case to prove cause-in-fact); *Onwuteaka v. Gill*, 908 S.W.2d 276, 281 (Tex. App.—Houston [1st Dist.] 1995, no writ) (stating, in legal malpractice case, "the breach of the standard of care and proximate cause must be proven by expert testimony"); *see also W.C. LaRock, D.C., P.C. v. Smith*, 310 S.W.3d 48, 56 (Tex. App.—El Paso 2010, no pet.) (applying same principle to medical negligence claim); *Ocomen v. Rubio*, 24 S.W.3d 461, 466 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (same).

## C.   The no-analytical-gap requirement

"It is incumbent on an expert to connect the data relied on and his or her opinion and to show how that data is valid support for the opinion reached." *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 642 (Tex. 2009). "A court may conclude that there is simply too great an analytical gap between the data and the

opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519 (1997) (cited with approval by *Gammill*, 972 S.W.2d at 727). An expert's opinion is unreliable if it is based on subjective belief or unsupported speculation. *See Comacho*, 298 S.W.3d at 642–43. "Bare, baseless opinions will not support a judgment," and "conclusory statement[s] of an expert witness [are] insufficient to create a question of fact to defeat summary judgment." *Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013) (quoting *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009), and *McIntyre v. Ramirez*, 109 S.W.3d 741, 749–50 (Tex. 2003)). Something is not true simply because an expert says it is so. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 712 (Tex. 1997). "[A] claim will not stand or fall on the mere *ipse dixit* of a credentialed witness." *Elizondo*, 415 S.W.3d at 264 (quoting *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999)). Thus, when an expert brings to court "little more than his credentials and a subjective opinion," it is not evidence that will support a judgment. *Havner,* 953 S.W.2d at 712; *Cooper Tire*, 204 S.W.3d at 800–01; *Buls*, 55 S.W.3d at 208.

The Texas Supreme Court has addressed the reliability requirement in two legal malpractice cases. *See Burrow*, 997 S.W.2d at 229; *Elizondo*, 415 S.W.3d at 259. In *Burrow*, the Court held that the opinions offered by the defendants' expert were too conclusory to support judgment for the attorneys as a matter of law on the plaintiffs' legal-malpractice claims. *Burrow*, 997 S.W.2d at 234. The expert sought

to testify that the settlements reached on behalf of the plaintiff-clients were reasonable and fair and, therefore, the clients suffered no damages as a matter of law due to the settlement of their claims. *See id.* at 235. The Court held that there was an insufficient connection between the expert's opinion on reasonableness and fairness and the underlying facts of the plaintiffs' claims. *Id.* at 235–36. Even a qualified expert "cannot simply say, 'Take my word for it, I know: the settlements were fair and reasonable.'" *Id.* at 236. Opinions must have a reasoned basis; an expert must explain how he reached his conclusion. *See id.* The expert's opinion was unreliable because he "does not explain why the settlements were fair and reasonable for each of the Clients." *Id.*

Later, in *Elizondo*, it was the plaintiff's expert who failed to explain how he connected his opinion with the data, leaving an analytical gap and making the opinion conclusory. 415 S.W.3d at 259. The plaintiff's expert sought to testify that the plaintiff's case had a value of $2–3 million, which was far more than the $50,000 settlement obtained by the defendant lawyer. *See id.* at 262. The court held that the expert's opinion was not sufficiently tied to the facts to be reliable. *See id.* at 265. There was a "fatal analytical gap" because he failed "to offer specifics on why the value of the case was $2–3 million as opposed to the $50,000 received in settlement." *Id.*

Oldham's affidavit is similarly flawed. He states that he has 30 years' experience teaching family law courses. He correctly announces that community estates are divided in divorce through a "just and right" division that need not be equal. But he adds to that an assertion that it is common for the division to be "not that great." He concludes as follows:

> If the issue [of division of community debt] had been litigated in the McMahon divorce, a court could have decided to divide the community debt somewhat in the wife's favor, in light of her lower earning capacity. If that had occurred, and if the matter had gone to trial, Mrs. McMahon would have been asked to pay less than $300,000 of the total community debt of $600,000. But it seems clear that the court would have asked her to bear a significant portion of the debt, particularly in light of her substantial premarital savings that she retained after the divorce.
>
> * * *
>
> [Further in] my expert opinion, if this occurred, and the description of the total community estate set forth above is accurate, it was negligent for Ms. Zimmerman to recommend to Mr. McMahon that he accept the proposed settlement whereby he would be responsible for <u>all</u> the community debt . . . Mr. McMahon thereby became solely responsible or the $599,000 in community debt that accrued during the marriage.

Oldham states that he bases these opinions, in part, on his review of the documents, pleadings, affidavits and correspondence related to Zimmerman's representation of McMahon in his divorce case as well as his conversations with McMahon. He fails to explain, though, how these documents or the facts asserted in them support his opinions. For example, Oldham notes in his affidavit that there were allegations in the McMahon divorce of spousal abuse and infidelity, yet he

10

bases his opinion that the debt would have been divided equally on his assertion that "the court had made no finding regarding these allegations. The final divorce decree grants them a divorce based on 'no-fault' or insupportability." Oldham fails to explain why he believes the court would have disregarded those allegations—whether because of factual deficiencies in the proof or legal reasons—and still required Zimmerman, as Oldham states in his affidavit, to bear a significant portion of the community debt.

Oldham's affidavit fails to connect his opinion regarding the expected judicial division of community debt to actual divisions made in factually-similar divorces. *See Elizondo*, 415 S.W.3d at 266 (finding that expert failed to raise fact issue on settlement value after noting that "the expert might have compared this settlement 'to those of similar claims, or provided other information showing a relationship between the plaintiffs' circumstances and the amounts received [but he] did not do so.'") (quoting *Burrow*, 997 S.W.2d at 236). His affidavit references two cases involving somewhat equal property divisions and two cases in which unequal divisions were reversed. But he offers no proof that these four cases—out of the thousands of divorce cases in Texas—are representative of what a reasonable court would be expected to do. Oldham fails to link these four cases to his opinion about the division that should have been expected in the McMahon divorce.

11

Oldham also purports to rely on his own experience for his division-of-property opinion. But his affidavit does not demonstrate his experience on the precise matter in question here: whether a reasonable Texas trial court would have entered an order granting a different division of property. While Oldham avers he has been an expert in a number of family law cases, he does not state the outcomes of those cases or how those cases support his conclusion in this case. Additionally, he makes no assertion that he has practiced family law in Texas.

There is too large an analytical gap between the data relied upon by Oldham—the facts in the case, the four reported opinions, and his own experience—and his opinion that a reasonable court would have "asked her to bear a significant portion of the debt." *See Taylor v. Alonso, Cersonsky & Garcia, P.C.*, 395 S.W.3d 178, 187 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (concluding that expert in legal malpractice case failed to establish causal link due to analytical gap between opinion on anticipated trial outcome and realities at time of settlement). And, without a reliable basis for Professor Oldham's opinion that the property division would have been different, there is no stated basis for his second opinion that Zimmerman was negligent in advising McMahon to settle under the terms of the agreed divorce. *See Elizondo*, 415 S.W.3d at 266.

Because too great an analytical gap exists, we conclude that Professor Oldham's opinions lack connective reliability. *See Elizondo*, 415 S.W.3d at 266;

12

*Gammill*, 972 S.W.2d at 726. Accordingly, we hold that the trial court did not err by striking portions of Oldham's expert affidavit in which he opines that the McMahons' community debt would have been equally divided by a trial court and that Zimmerman was negligent in recommending the alternate division contained in the agreed divorce.

Therefore, we overrule McMahon's first issue.

### Summary Judgment

In his second issue, McMahon argues that the trial court erred by granting Zimmerman's no-evidence motion for summary judgment on his legal malpractice claim. His sole basis for claiming error is that Oldham's expert report provided more than a scintilla of evidence on each element of the tort and was, therefore, sufficient to preclude summary judgment.

### A. Standard of review

A party may move for summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the nonmovant bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex. App.— Houston [1st Dist.] 1999, no pet.) The burden then shifts to the nonmovant to produce evidence that raises a genuine issue of fact on the elements included in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582

(Tex. 2006). The nonmovant need not marshal all of his evidence; instead, his only requirement is to present "more than a scintilla of evidence" on the challenged elements. *Flameout Design*, 994 S.W.2d at 834; *Hoover v. Larkin*, 196 S.W.3d 227, 230–31 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *see also Havner*, 953 S.W.2d at 711. We review de novo the trial court's ruling on the motion for summary judgment. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

**B.      McMahon has no evidence of negligence or causation**

To prevail on a claim for legal malpractice, a plaintiff must demonstrate that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damage occurred. *Alexander*, 146 S.W.3d at 117. The only summary judgment evidence McMahon offered to support negligence, or causation specifically, was Oldham's opinion. McMahon concedes that, without Oldham's testimony on this issue, his "case was gutted." We have concluded that Oldham's expert opinions were unreliable. Because McMahon presented no other evidence to support his contention that Zimmerman's conduct caused him to suffer damages, we hold that he failed to raise a fact issue on causation and the trial court properly granted Zimmerman's no-evidence summary judgment motion on that basis.

We overrule McMahon's second issue.

14

**Fee Award**

In his third issue, McMahon argues that there was legally and factually insufficient evidence to support the award of $6,000 in attorney's fees on Zimmerman's breach-of-contract claim. McMahon contends that Zimmerman's failure to segregate the portion of the fees related to the breach-of-contract claim from the fees prosecuting her defamation claim and the fees defending McMahon's legal-malpractice claim left the trial court with insufficient evidence on which to award a fee.

A party seeking recovery of attorney's fees must "segregate fees between claims for which they are recoverable and claims for which they are not." *Chapa*, 212 S.W.3d at 311. Only fees that relate solely to unrecoverable claims are segregated out for non-payment. *Id.* at 313. The party seeking to recover attorney's fees carries the burden of proof. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).

The extent to which certain claims can be segregated is a mixed question of law and fact. *See Chapa*, 212 S.W.3d at 313; *Bair Chase Prop. Co. v. S & K Dev. Co.*, 260 S.W.3d 133, 138 (Tex. App.—Austin 2008, pet. denied). The fact-finder should consider the work actually performed to decide whether those legal services advanced a recoverable claim. *See Allan v. Nersesova*, 307 S.W.3d 564, 573 (Tex. App.—Dallas 2010, no pet.) (noting that drafting petition for tort claim not

15

necessary to pursue contract claim); *see also Bocquet*, 972 S.W.2d at 21 ("[T]he reasonableness of attorney's fees, the recovery of which is authorized by . . . statute, is a question of fact for the [factfinder's] determination."). In this case, the trial court was the fact-finder, and it awarded $6,000 in fees on the breach-of-contract claim.

## A.    The fee claim

Zimmerman had a statutory basis for seeking attorney's fees on her breach-of-contract claim but no independent basis for attorney's fees on her defamation claim or her defense of the legal malpractice claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008) (permitting attorney's fees on breach-of-contract claim); *cf. Am. Int'l Indus., Inc. v. Scott*, 355 S.W.3d 155, 162 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding that court may award attorney's fees only when authorized by statute or by parties' contract). Zimmerman's attorney testified that $72,810 in attorney's fees—which was nearly the entire amount invoiced to Zimmerman—should have been recoverable because the breach-of-contract claim and the legal-malpractice claim were too intertwined to require segregation. This was based on Zimmerman's contention that she could not prevail on her breach-of-contract claim unless she also defeated McMahon's legal-malpractice claim. Zimmerman offered no testimony attempting to further segregate the fees between the breach-of-contract claim, the defamation claim, and

16

her defense of the legal-malpractice claim. To support the award of attorney's fees, Zimmerman offered, and the trial court admitted, 49 pages of detailed legal bills from Zimmerman's attorney covering all aspects of the litigation.

## B. The trial court's findings

The trial court made findings of fact, including the following:

- The Law Firm offered evidence that it incurred over $70,000 in attorneys' fees during the case. . . . The bulk of the fees were incurred in defending the legal malpractice action and not in prosecuting the breach of contract action.

- The Law Firm and Zimmerman did not offer any specific evidence to segregate the fees related to the breach of contract action from the fees incurred in defending the legal malpractice action or in pursuing the defamation claim.

- The Court reviewed the invoices Zimmerman received from her defense counsel to determine how much time was spent on prosecuting the breach of contract action.

- Time entries related to a potential counterclaim first appeared on October 17, 2011. Additional fees were incurred near the time the counterclaim was filed in February 2012. Prior to trial, the invoices indicate that no more than three hours were spent on matters related to the breach of contract claim.

It also made the following conclusions of law:

- By a preponderance of the evidence, Defendant breached a valid and enforceable contract. The Law Firm suffered damages as a result.

- The Law Firm is entitled to recover attorneys' fees related to the breach of contract claim.

17

- Litigants seeking to recover attorneys' fees are required to segregate fees between claims for which they are recoverable and those claims for which fees are not recoverable.

- Based on the evidence presented and considering the factors for determining a reasonable fee, the Law Firm shall recover attorneys' fees in the amount of $6,000 for representation in the trial court.

When the appellate record includes the reporter's record, the trial court's factual findings, whether express or implied, may be challenged for legal and factual sufficiency. *See Miranda v. Byles*, 390 S.W.3d 543, 569 (Tex. App.— Houston [1st Dist.] 2012, pet. denied); *Middleton v. Kawasaki Steel Corp.,* 687 S.W.2d 42, 44 (Tex. App.—Houston [14th Dist.]), *writ ref'd n.r.e.,* 699 S.W.2d 199 (Tex. 1985). We review the sufficiency of the evidence supporting a trial court's challenged factual findings under the same standards used to review a jury's findings. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994).

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). In reviewing a factual sufficiency challenge, we consider and weigh all of the evidence supporting and contradicting the challenged finding and set the finding aside only if the evidence is so contrary to the overwhelming weight of the evidence as to make the finding clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

## C.     Remand not required

Zimmerman's counsel did not attempt to segregate the work performed on the breach-of-contract claim, relying instead on the argument—which the trial court rejected and which she does not contest—that the claims were too intertwined to segregate. Typically, if segregation is required and the claimant does not provide testimony from counsel on the proper segregation of the fee, the cause is remanded for a factual determination of the portion of the attorney's work that is attributable to the recoverable claim. *See, e.g.*, *CA Partners v. Spears*, 274 S.W.3d 51, 84 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (remanding for determination of attorney's fees based on holding that segregation was required). In this case, though, the trial court reviewed the billing records and made factual findings regarding the amount of the fee that was attributable to the breach-of-contract claim. The question, then, is whether remand is appropriate given that the trial court already has made factual findings to segregate the fee based on the court's review of the evidence, and, if not, whether the evidence before the trial court was legally and factually sufficient to support the award.

While trial courts have no obligation to delve into billing records to segregate fees on behalf of litigants who do not offer segregation testimony, the trial court did not err in electing to do so. There was a statutory basis for awarding Zimmerman attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8)

19

(permitting recovery of attorney's fees on breach-of-contract claim). A related provision, section 38.004, permits a trial court to take judicial notice of usual and customary attorney's fees as well as the contents of a case file to award attorney's fees under the statute, even without receiving additional evidence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.004 (permitting judicial notice on claim for attorney's fees under § 38.001); *Superior Ironworks, Inc. v. Roll Form Prods., Inc.*, 789 S.W.2d 430, 431 (Tex. App.—Houston [1st Dist.] 1990, no writ) (explaining same). Appellate courts may presume that the trial court did take such judicial notice. *Alford v. Johnston*, 224 S.W.3d 291, 300 (Tex. App.—El Paso 2005, pet. denied).

In *Alford*, the appellant challenged the award of attorney's fees, contending that they had not been adequately segregated. *See id.* at 298. The court held that—even assuming the fees were not adequately segregated—"the award would still stand" because "the trial court did have sufficient information upon which to determine the usual and customary attorney's fees for the contract claim at issue." *Id.* at 300. The court held that an award of $2,000 in attorney's fees for services rendered through trial was neither arbitrary nor unreasonable and that the trial court did not abuse its discretion in awarding that amount. *See id.; see also Flint & Assocs. v. Intercont'l Pipe & Steel*, 739 S.W.2d 622, 625–26 (Tex. App.—Dallas 1987, writ denied) (stating that trial court has discretion to determine portion of

requested fees reasonably attributable to services for which fees could be recovered); *Express One Int'l. v. Kitty Hawk Charters*, No. 05-95-01741-CV, 1998 WL 261783 (Tex. App.—Dallas May 26, 1998, pet. denied) (mem. op.) (not designated for publication) (same); *but see Metal Bldg. Components, LP v. Raley*, No. 03-05-00823-CV, 2007 WL 74316, at *18 (Tex. App.—Austin Jan. 10, 2007, no pet.) (remanding case for redetermination of attorney's fees where claimant declined to offer opinion segregating fees and record was silent on trial court's segregation analysis).

We, therefore, conclude that remand is not required for a factual determination of reasonable fees; the trial court was permitted to determine a fee based on the available information. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.004; *Alford*, 224 S.W.3d at 300.

**D.     Evidence supports award**

A trial court determines the reasonableness of an attorney's fee award by considering the following factors: (1) the time and labor required, novelty, and difficulty of the question presented and the skill required to properly perform the legal service; (2) the likelihood that the acceptance of employment precluded other employment by the lawyer; (3) the fee customarily charged in the locality for similar services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length

21

of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

"Trial judges can draw on their common knowledge and experience as lawyers and as judges in considering the testimony, the record, and the amount in controversy in determining attorney's fees." *Protect Envtl. Servs. v. Norco Corp.*, 403 S.W.3d 532, 543 (Tex. App.—El Paso 2013, pet. denied) (holding that trial court could reduce fee even though attorney's testimony was uncontroverted); *McCall v. AXA Equitable Life Ins. Co.*, No. 14-04-01111-CV, 2006 WL 17861, at *4 (Tex. App.—Houston [14th Dist.] Jan. 5, 2006, no pet.) (same); *see also In re Guardianship of Hanker*, No. 01-12-00507-CV, 2013 WL 3233251, at *5 (Tex. App.—Houston [1st Dist.] June 25, 2013, no pet.) (holding that trial judge may "draw[] on her knowledge of the case, review of the court file, and her experience in other . . . proceedings in determining whether a requested fee is reasonable"). Trial courts are considered experts on the reasonableness of attorney's fees. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (holding that trial courts are experts on reasonableness of attorney's fees); *In re TMT Trailer Ferry, Inc.*, 577 F.2d 1296, 1304 (5th Cir. 1978) ("[A]ppellate courts, as trial courts, are themselves experts as to the reasonableness of attorneys'

22

fees . . . ."). Further, courts are free to look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties to determine a reasonable fee. *Garrod Invs., Inc. v. Schlegel,* 139 S.W.3d 759, 767 (Tex. App.—Corpus Christi 2004, no pet.); *In re Marriage of C.A.S. & D.P.S.*, 405 S.W.3d 373, 387 (Tex. App.—Dallas 2013, no pet.) (stating that trial court need not hear evidence on every relevant factor to determine reasonable attorney fees and holding that court can look at entire record and use common knowledge of participants as lawyers and judges to decide reasonable fee).

Zimmerman's counsel testified that $72,810 of the $77,202 total amount billed was a reasonable and proper fee award, based on the theory that all of it was intertwined with the breach-of-contract claim. The trial court also had available, in evidence, detailed time entries describing work performed to advance the breach-of-contract claim. For example, an entry on October 17, 2011 stated that the attorney "identified potential counterclaim for unpaid attorney's fees . . . ." Entries on February 2, 3, 6, and 14 detail the drafting of the counterclaim, conferences with the client concerning the claim, and the finalizing and filing of the pleading. The trial court was aware that counsel's fee would need to take into account both pre-trial and trial phases of the litigation, based on counsel's testimony. The trial lasted two days. Further, counsel testified that the customary fee charged in the

area for legal services was $300 per hour, and the evidence established that counsel charged Zimmerman that same amount per hour.

Based on this evidence, the trial court made findings of fact and conclusions of law. The findings of fact include the following:

- The Law Firm offered evidence that it incurred over $70,000 in attorneys' fees during the case. . . . The bulk of the fees were incurred in defending the legal malpractice action and not in prosecuting the breach of contract action.

- The Law Firm and Zimmerman did not offer any specific evidence to segregate the fees related to the breach of contract action from the fees incurred in defending the legal malpractice action or in pursuing the defamation claim.

- The Court reviewed the invoices Zimmerman received from her defense counsel to determine how much time was spent on prosecuting the breach of contract action.

- Prior to trial, the invoices indicate that no more than three hours were spent on matters related to the breach of contract claim.

The court's conclusions of law included that (1) the fact-finder should consider the *Arthur Andersen* factors when determining the reasonableness of the fee, and (2) "[b]ased on the evidence presented and considering the factors for determining a reasonable fee, the Law Firm shall recover attorneys' fees in the amount of $6,000 for representation in the trial court." *Arthur Andersen*, 945 S.W.2d at 818 (explaining factors).

Based on our review of the record, we conclude that there was legally and factually sufficient evidence to support the award of $6,000 in attorney's fees on

24

the breach-of-contract claim. The detailed invoices and counsel's testimony concerning the customary fee and his fee for legal services were some evidence in support of the award, meeting the legal sufficiency requirement. *See Jocson v. Crabb*, 196 S.W.3d 302, 310–11 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (determining fee where attorney failed to segregate by reviewing attorney's billing records for compensable entries and applying counsel's stated hourly rate); *see also City of Keller*, 168 S.W.3d at 827 (explaining legal sufficiency standard).

Further, a $6,000 fee on a fully litigated breach-of-contract claim is not so clearly wrong or manifestly unjust to require reversal, given that there were detailed billing records in evidence describing the legal services performed, the trial lasted two days, Zimmerman's counsel testified about the total fee incurred, his billable rate, and the standard rate in the legal community, and the trial court could take judicial notice of the standard and customary fee as well as the content of the case file. *See Cain*, 709 S.W.2d at 176 (discussing factual sufficiency standard).

Having concluded that there was both legally and factually sufficient evidence to support the trial court's award of $6,000 in attorney's fees, we overrule McMahon's third issue.

25

## Conclusion

Having overruled all three of McMahon's issues, we affirm the trial court's judgment.

Harvey Brown
Justice

Panel consists of Justices Keyes, Bland, and Brown.