**Opinion issued October 19, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00768-CV

————————————

### ISOMERIC INDUSTRIES, INCORPORATED, Appellant

### V.

### TRIPLE CROWN RESOURCES, LLC, Appellee

---

**On Appeal from the 51st District Court**
**Irion County,[1] Texas**
**Trial Court Case No. CV20-013**

---

[1] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Third District of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (authorizing transfer of cases between courts of appeals). Under the Texas Rules of Appellate Procedure, "the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court." TEX. R. APP. P. 41.3. The parties have not cited, nor has our own research revealed, any conflict between the precedent of the Third Court of Appeals and that of this court on any relevant issue.

## MEMORANDUM OPINION

Appellant Isomeric Industries, Incorporated (Isomeric) appeals from the trial court's summary judgment order awarding $75,363.98 in attorney's fees and court costs to appellee Triple Crown Resources, LLC (Triple Crown) in Isomeric's suit to foreclose on mineral liens. In one issue, Isomeric contends that the trial court abused its discretion in awarding attorney's fees to Triple Crown because its redacted billing records precluded evaluation of the reasonableness and necessity of the fees and its fees are facially unreasonable. We affirm.

## Background

Triple Crown, a Texas-based oil and gas producer, hired Clearpoint Chemicals LLC (Clearpoint) to provide materials and services to fracture its oil wells located in Irion County between July 2019 and January 2020. Clearpoint contracted with Isomeric to furnish certain chemicals in support of its services to Triple Crown. Clearpoint invoiced Triple Crown for its materials and services, and Triple Crown made eight payments to Clearpoint, with its final payment to Clearpoint having been made on April 24, 2020. Triple Crown incurred no further charges from Clearpoint.

Isomeric subsequently made a demand on Clearpoint for payment of the materials it had furnished to Clearpoint. Clearpoint did not tender payment. In July 2020, Isomeric filed a Notice of Statutory Lien on Mineral Property in the amount

of $647,466.62 against several of Triple Crown's oil wells. Clearpoint later filed for Chapter 11 bankruptcy.

On October 14, 2020, Isomeric sued Triple Crown seeking to foreclose on its mineral liens. Triple Crown answered and counterclaimed, seeking a declaratory judgment that Isomeric's liens were invalid under Texas Property Code Section 56.043, and sought recovery of its attorney's fees pursuant to Texas Property Code Section 53.156 and Texas Civil Practice and Remedies Code Section 37.009. Isomeric answered asserting a general denial to Triple Crown's counterclaim.

On June 8, 2022, Triple Crown filed a traditional and no-evidence motion for summary judgment arguing that Isomeric's lien was invalid and could not be foreclosed. It argued that it was entitled to traditional summary judgment on Isomeric's lien claim because the undisputed evidence showed that, in accordance with Texas Property Code Chapter 56, (1) Triple Crown could not be liable for more than the amount owed to Clearpoint at the time Isomeric sent notice of its lien; and (2) at the time Isomeric sent its notice, Triple Crown had paid Clearpoint in full. Triple Crown argued that it was also entitled to no-evidence summary judgment on Isomeric's claim because (1) Isomeric could present no evidence that Clearpoint used its chemicals on the oil wells in question; and (2) even if it could present such evidence, Isomeric failed to provide any evidence that Triple Crown owed money to Clearpoint on the date of Isomeric's notice. Triple Crown argued that it was entitled

3

to recover $75,363.98 in attorney's fees and court costs incurred in defending against Isomeric's invalid mineral lien pursuant to Texas Property Code Section 53.156. Triple Crown attached (1) the affidavit of Aleks Jovanovic, Triple Crown's Controller; (2) excerpts of Clearpoint invoices and Triple Crown checks; (3) Isomeric's notice of lien; (4) the declaration of Samuel S. Allen, Triple Crown's lead trial counsel; and (5) an itemized statement of legal services rendered by Jackson Walker L.L.C. in the case.

Isomeric responded to Triple Crown's summary judgment motion arguing that (1) Triple Crown's motion was moot because Isomeric had filed and recorded a Release of Lien and therefore its lien was nonexistent; and (2) Triple Crown was not entitled to its attorney's fees because it wrongly withheld information from Isomeric, its fees were unreasonable, and it presented insufficient evidence to support the amount of requested attorney's fees. Isomeric attached the affidavit of Kimberley B. Kelly, Isomeric's lead trial counsel, and accompanying exhibits.

Triple Crown replied to Isomeric's summary judgment response arguing that (1) its summary judgment motion was not moot because Isomeric had refused to nonsuit its claims despite having released its lien; and (2) it was entitled to recover its attorney's fees under Property Code Section 53.156, because the requested fees were reasonable and necessary, and Isomeric failed to present evidence

controverting Triple Crown's attorney's fees.[2] Triple Crown attached Allen's second declaration and accompanying exhibits.

On August 4, 2022, Isomeric nonsuited its claims against Triple Crown.

The trial court held a hearing on Triple Crown's motion. Allen argued that his declaration and the attached billing records submitted with Triple Crown's summary judgment motion demonstrated that the hours spent on the case and the expenses incurred were reasonable and necessary. He stated that the hours and fees incurred consisted of two stages: (1) drafting the original answer and gathering and analyzing the material evidence to prove that Isomeric's lien was not valid, and (2) preparing Triple Crown's motion for summary judgment and reply brief.

On August 8, 2022, the trial court granted Triple Crown's summary judgment motion, declared Isomeric's lien against Triple Crown invalid, and awarded $75,363.98 in attorney's fees and court costs to Triple Crown.

This appeal followed.

**Standard of Review**

We review a trial court's award of attorney's fees for an abuse of discretion. *See Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner

---

[2] In its reply brief, Triple Crown stated that it would provide the trial court with unredacted versions of its attorney's fee invoices for in camera review if the trial court deemed it necessary.

without reference to guiding rules or principles. *See Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 742 (Tex. 2018); *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011). Under this standard, we cannot reverse the trial court's award merely because we would have awarded a different amount of fees. *See Samlowski*, 332 S.W.3d at 410 (noting abuse of discretion standard of review insulates trial court's reasonable decisions from appellate second-guessing). "Further, courts are free to look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties to determine a reasonable fee." *McMahon v. Zimmerman*, 433 S.W.3d 680, 693 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also Santos v. Tex. Enters., Inc.*, No. 03-09-00579-CV, 2010 WL 4054479, at \*2 (Tex. App.—Austin Oct. 15, 2010, no pet.) (mem. op.).

## Reasonable and Necessary Attorney's Fees

Isomeric contends that the trial court abused its discretion in awarding Triple Crown its requested attorney's fees because Triple Crown failed to provide sufficient evidence of the reasonableness and necessity of those fees, and the fees are facially unreasonable. Triple Crown responds that it presented sufficient evidence of its fees, which Isomeric did not controvert, and the trial court did not abuse its discretion in determining that Triple Crown was entitled to recover its requested fees.

## A.     Applicable Law

Triple Crown requested its attorney's fees from Isomeric pursuant to Texas Property Code Section 53.156. That section provides, in relevant part, that "in any proceeding to declare that any lien or claim is invalid or unenforceable in whole or in part, the court shall award costs and reasonable attorney's fees as are equitable and just." TEX. PROP. CODE § 53.156.

Texas follows the lodestar method to determine the amount of an award of attorney's fees.[3] *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496 (Tex. 2019). The lodestar method requires the fact finder to determine reasonable attorney's fees by first determining the reasonable hours spent by counsel in the case and the reasonable hourly rate for counsel's work. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). The fee claimant must provide sufficient evidence of both the reasonable hours worked and the reasonable hourly rate.

---

[3]     The lodestar method is a shorthand version of the *Arthur Andersen* considerations a factfinder should consider when determining the reasonableness of a fee. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496 (Tex. 2019) (citing *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) listing factors as (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered)).

*Rohrmoos*, 578 S.W.3d at 498. Sufficient evidence includes, at a minimum, evidence of (1) the nature of the work performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *See id*.; *see also City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013) (per curiam) ("In *El Apple*, we said that a lodestar calculation requires certain basic proof, including itemizing specific tasks, the time required for those tasks, and the rate charged by the person performing the work."). The fee claimant must establish the reasonableness and necessity of its requested fees. *Rohrmoos*, 578 S.W.3d at 488.

## B.     Analysis

Isomeric argues that there is insufficient evidence that Triple Crown's fees were reasonable and necessary because its heavily redacted billing records precluded evaluation of the reasonableness and necessity of the award. It also argues that Triple Crown's fees were facially unreasonable given the minimal activity in the case.

To support its claim for attorney's fees, Triple Crown attached two declarations of its lead counsel, Samuel S. Allen, and accompanying exhibits, to its summary judgment motion and reply brief. In his first declaration, Allen stated he was familiar with the *Arthur Andersen* factors that courts consider in determining the reasonableness of attorney's fees. He stated that he personally performed,

8

observed, or supervised the performance of legal services for and on behalf of Triple Crown. Allen stated that he, along with Jackson Walker partners Edwin Buffmire and Ross Forbes, Jr., Jackson Walker associate Katie Brown, and Jackson Walker employee Leo Gonzalez, performed the work in this lawsuit on behalf of Triple Crown. Allen stated that the time spent on the tasks performed was reasonable and necessary based on the novelty and difficulty of the issues and the skill required to perform the legal services. Allen stated that the rates charged by Triple Crown's attorneys were reasonable and the procedural events of the case justified the fee award sought by Triple Crown in defending against Isomeric's lawsuit.

Allen attached redacted billing records reflecting that Triple Crown had incurred $66,601.00 in attorney's fees and $2,262.98 in costs between December 2020 and May 2022. A number of the specific tasks include descriptions such as "Confer [redacted]," Receipt and Review of [redacted]," Prepare [redacted]," and "Analyze [redacted]" while other descriptions include more detail such as "Confer with S. Allen and prepare [redacted]," "Receipt and review of correspondence from opposing counsel; correspondence with E. Buffmire [redacted]; replied to opposing counsel; update and request [redacted]," "Finalized letter to opposing counsel and transmitted with invoices and ledger," and "Receipt and review of correspondence from K. Kelly and contacted Buffmire [redacted]." Allen stated that Triple Crown would likely incur $6,500.000 in additional attorney's fees and costs to prepare a

summary judgment reply and prepare for and attend the hearing on its motion. To his second declaration, Allen attached copies of (1) an email to Isomeric's counsel which included requested documentation of Clearpoint's entire account with Triple Crown and a ledger of Clearpoint's balance, and (2) a letter to Isomeric's counsel forwarding invoices and payments between Clearpoint and Triple Crown reflecting that Triple Crown did not owe money to Clearpoint at the time of Isomeric's lien notice.

Isomeric argues that Triple Crown's evidence is insufficient because the billing records are too heavily redacted to enable the trial court to determine the reasonableness and necessity of the fees. In support of its argument, Isomeric relies on three cases in which courts have concluded that redacted billing records prevented the trial court from performing a meaningful evaluation of the reasonableness and necessity of the requested fees because the records lacked specificity as to the tasks performed by counsel. We examine those cases below.

In *Brant Oilfield Management & Sales, Inc. v. Mountwest, Inc.*, 14-15-00240-CV, 2016 WL 3574669 (Tex. App.—Houston [14th Dist.] June 30, 2016, no pet.) (mem. op.), a contract dispute case, the appellant challenged the legal and factual sufficiency of the evidence supporting the attorney's fees awarded to appellee. *See id.* at *4. At trial, a partner in appellee's counsel's firm testified about the reasonableness and necessity of the attorney's fees claimed by appellee, and

counsel's redacted billing statements were admitted. *See id*. at *1. The partner testified that he did not know specifics for each of the entries on the billing statements, but that he knew generally what the attorneys did. *See id.* at *5. He further testified that although he had an understanding of the discovery done in the case, he had "not taken the time to do a deep dive and review those things." *Id.* The Fourteenth Court of Appeals concluded that although the billing statements identified the case, the billing attorney, the dates, the number of hours, and the billing rates, "they did not provide the required specificity as to the nature of the tasks performed by each attorney." *Id*. The court held that no legally sufficient evidence supported the amount of attorney's fees awarded by the trial court, and it reversed and remanded for a redetermination of fees. *See id.*

*Brant* is distinguishable from the present case because the billing records in that case had been redacted to remove the *entire* narrative. Here, by contrast, Triple Crown's redactions, which were made to protect privileged information, left the billing attorney, hours spent, rate, and non-privileged portions of the narrative intact. Courts, including this one, have found descriptions similar to those in Triple Crown's billing records to be sufficiently specific. *See, e.g.*, *Bailey v. Smith*, 581 S.W.3d 374, 398 (Tex. App.—Austin 2019, pet. denied) (concluding that fee records detailing specific amounts of time attorneys spent on tasks such as "Drafting/Revising Documents," "Reviewing/Research Background Info,"

11

"Conferring with AG Personnel," and similar categories were sufficiently specific to enable trial court to make meaningful evaluation of reasonableness of fees claimed for each attorney on case); *Med. Disc. Pharm., L.P. v. State*, No. 01-13-00963-CV, 2015 WL 4100483, at \*17 (Tex. App.—Houston [1st Dist.] July 7, 2015, pet. denied) (mem. op.) (concluding time summary which identified timekeepers, hours devoted to each activity, and description of activities that were divided into categories such as "attend/appear at hearing," "drafting/revising pleadings," and "reviewing/researching law," was sufficiently specific because summary indicated time each person spent on particular categories of tasks). Further, in contrast to the partner's testimony in *Brant*, Allen offered written testimony regarding his familiarity with the billing records and his involvement in the tasks performed.

In *Person v. MC-Simpsonville, SC-1-UT, LLC*, 03-20-00560-CV, 2021 WL 3816332 (Tex. App.—Austin Aug 27, 2021, no pet.) (mem. op.), involving a breach of a guaranty agreement, the Austin Court of Appeals examined the redacted billing records and attorney testimony offered in support of appellee's requested attorney's fees to determine whether the evidence was legally sufficient to calculate a reasonable fee award using the lodestar method. *See id.* at \*8. The court noted that "[i]t is not improper to redact billing records to preserve attorney-client privileged communications before offering them into evidence." *Id.* The court, however, stated

> [W]hile some of the billing entries in the record showed with reasonable clarity the *types* of tasks that were performed, the redactions eliminated

12

virtually all specificity about those tasks and therefore largely prevented a meaningful evaluation of their reasonableness and necessity. For example, the majority of entries on the redacted billing records show only that an attorney or other legal professional had a telephone conference with somebody about something, emailed somebody about something, discussed something with somebody, reviewed something, researched something, drafted something, coordinated something, or worked on something.

*Id*. at 9. The court concluded that the redacted billing records admitted in evidence were insufficient to allow the trial court to evaluate the reasonableness and necessity of hours worked that gave rise to nearly a quarter million dollars of attorney's fees. *See id*. The court also considered the testimony of two of appellee's attorneys offered in support of the requested fees. *See id.* One of the attorneys testified only that "she was familiar with the correspondence in the case, the pleadings, discovery, the motions, the hearings and I've reviewed the fees statements." *Id*. The other attorney testified that "[t]he work performed by me and those with my law firms was reasonable and necessary for prosecuting plaintiff's claims in this case, and all of the work was prudently and efficiently performed. . . . I have spent 200 hours performing legal work on this case. In my opinion, all of this work was reasonable under the circumstances and appropriate and efficiently performed." *Id*. The court concluded that the testimony was "too general" to allow the trial court to determine whether the hours worked were reasonable and necessary. *Id.*

*Person* is distinguishable from the present case in two respects. First, the attorneys in *Person* testified in very general terms that they were familiar with the

13

"pleadings, discovery, the motions, the hearings" and "spent 200 hours performing legal work on this case." *Id.* Here, by contrast, Allen testified that he personally performed, observed, or supervised the performance of the legal services in this case. Second, appellants' counsel in *Person* testified in some detail that in his opinion the attorney's fees requested by appellee were neither reasonable nor necessary. *See id.* at \*7. The court noted that, with this contrary evidence, the presumption of reasonableness disappeared. *See id.* In this case, Isomeric did not offer any evidence to contravene Triple Crown's evidence submitted in support of its attorney's fees. *See Robertson v. Emanuel-Johnson*, No. 01-20-00198-CV, 2021 WL 5773880, at \*4 (Tex. App.—Houston [1st Dist.] Dec. 7, 2021, pet. denied) (mem. op.) ("An attorney's affidavit can sufficiently establish reasonable attorney's fees on a motion for summary judgment, but the nonmovant may submit an affidavit challenging the reasonableness of the fees, creating a fact issue precluding summary judgment."); *Triton 88, L.P. v. Star Elec., L.L.C.*, 411 S.W.3d 42, 64 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("An attorney's affidavit constitutes expert testimony that will support an award of attorney's fees in a summary judgment proceeding. . . . [T]he presumption of reasonableness remains in effect when there is no evidence submitted to challenge the affidavit proof of the summary judgment movant.").

In *McGibney v Rauhauser*, 549 S.W.3d 816 (Tex. App.—Fort Worth 2018, pet. denied), a defamation case, the Fort Worth Court of Appeals concluded that

14

there was insufficient evidence to support the trial court's award of the entire amount of attorney's fees sought by the appellee and that the fees awarded were not reasonable. *See id.* at 821. The court noted that some of the entries on the attorney's billing records were so heavily redacted that the trial court could not have had sufficient evidence to determine that the entire amount was reasonable. *See id.* The court further noted that appellee's own evidence demonstrated, among other things, (1) that a portion of the fees awarded included a charge for legal work related not only to a different case but also one in which appellee was not a party, (2) appellee's attorney billed for research on matters wholly unrelated to the suit, (3) "a troublesome pattern of heavy front-loading of legal work" that was "premature and of questionable reasonableness in the early stages of the lawsuit," and (4) that numerous hours were devoted to reviewing not only the rulings or holdings of particular cases but also the entire records of those cases, including cases outside of the court's jurisdiction. *Id.* at 823–25. *McGibney*, in which the billing records affirmatively disproved reasonableness, is inapposite.

A number of the billing records in this case are, indeed, heavily redacted. *See Canadian Real Estate Holdings, LP v. Karen F. Newton Revocable Tr.*, 05-20-00747-CV, 2022 WL 4545572, at \*4 (Tex. App.—Dallas Sept. 29, 2022, no pet.) (mem. op.) (noting when attorney's invoices are offered as evidence, they are

15

routinely redacted to protect attorney–client and work-product privileges).[4] However, billing records are not required to prove that requested fees are reasonable and necessary. *See Rohrmoos*, 578 S.W.3d at 502. The proper inquiry is not whether Triple Crown's billing records were excessively redacted but, rather, whether the evidence, as a whole, satisfied the minimum evidentiary requirements to support the fee award. *See El Apple*, 370 S.W.3d at 762–63; *Rohrmoos*, 578 S.W.3d at 498; *see also Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *16 n.21 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied) (mem. op.) ("[T]he operative question is whether the trial court had sufficient evidence to exercise its discretion, not whether the billing records were or were not redacted."). Here, the trial court presided over this case for nearly two years, reviewed Triple Crown's counterclaim, summary judgment motion, reply brief, and two attorney declarations with supporting documentation, including the redacted billing records, and considered counsel's arguments at the hearing on Triple Crown's motion. As noted above, Isomeric did not present any evidence controverting Triple Crown's evidence in support of its requested fees. *Triton 88*, 411 S.W.3d at 64 (noting

---

[4]    Isomeric does not assert that any of the redacted material was not privileged. As previously noted, Triple Crown offered unredacted versions of the billing records to the trial court for in camera review in its reply brief and at the hearing on its summary judgment motion.

affidavit supporting award of attorney's fees is presumed reasonable unless it is rebutted with controverting evidence).

Isomeric also argues that Triple Crown's attorney's fees are facially unreasonable in light of the minimal activity in the case. Specifically, Isomeric argues that Triple Crown's only activity in this case consisted of filing its answer and counterclaim, sending correspondence to Isomeric's counsel, and filing its motion for summary judgment. It further asserts that Triple Crown incurred substantial fees when there was no activity in the case. We find this argument unavailing. The filing of a counterclaim and summary judgment motion necessarily includes time spent preparing and drafting the pleading and motion as well as other tasks such as conducting legal research and analyzing issues. "Trial courts are considered experts on the reasonableness of attorney's fees" and "[t]rial judges can [also] draw on their common knowledge and experience as lawyers and as judges" in evaluating fee requests. *Dimension Homes, Inc. v. Young*, No. 01-19-00247-CV, 2020 WL 4457960, at *4 (Tex. App.—Houston [1st Dist.] Aug. 4, 2020, no pet.) (mem. op.); *McMahon*, 433 S.W.3d at 693. Here, the trial court judge could have drawn on her own experience as a lawyer and judge in determining that the tasks performed and fees incurred by Triple Crown to obtain resolution of Isomeric's lawsuit were not unreasonable. *See Dimension Homes*, 2020 WL 4457960, at *4; *McMahon*, 433 S.W.3d at 693.

Taken together, we conclude that there is sufficient evidence that the attorney's fees incurred by Triple Crown to avoid a judgment of nearly $650,000 sought by Isomeric were reasonable and necessary, and that Triple Crown's fees are not facially unreasonable. The trial court did not abuse its discretion in awarding these fees. Accordingly, we overrule Isomeric's issue.

## Conclusion

We affirm the trial court's judgment.

Amparo Guerra
Justice

Panel consists of Justices Goodman, Rivas-Molloy, and Guerra.

18