ACCEPTED
01-14-00082-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/13/2015 12:00:34 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-00082-CV

IN THE

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/13/2015 12:00:34 PM
CHRISTOPHER A. PRINE
Clerk

FIRST COURT OF APPEALS

AT HOUSTON, TEXAS

MARY LYNN KANTARA GERKE

Appellant,

v.

JAMIL "JAMES" KANTARA

Appellee.

Appealed from the 311TH District Court of

Harris County, Texas

―――――――――――――――――――――――――――――――――――――――

**APPELLEE'S BRIEF**

_____

Wilfried P. Schmitz
Texas Bar No. 17778700
17040 El Camino Real, Suite 400
Houston, Texas 77058
Tel: (281) 486-5066
Fax: (281) 486-2041
court_documents@schmitzlaw.com
Attorney for Jamil "James" Kantara

ORAL ARGUMENT WAIVED

i

# TABLE OF CONTENTS

STATEMENT OF ORAL ARGUMENT………………………………………….v

REFERENCE GUIDE……………………………………………………...v

INDEX OF AUTHORITIES…………………………………………...vii

STATEMENT OF FACTS……………………………………………1

SUMMARY OF ARGUMENT…………………………………………...13

ARGUMENT AND AUTHORITIES…………………………….……..14

Reply to Issue I:……………………………………………….……..13

    I.    Response to Brief of Appellant's Issue No. 1:  The
    trial court's final "Order in Suit to Modify Parent-
    Child Relationship" did not violate Mary's due
    process rights……………………………………………...14

    Ia. –Ic.  Mary Failed To Preserve Error……………………..14

    I.1    The Court Did Not Modify Items 1, 2, 3, 4,
    5, 8, 13 and 14……………………………………………16

    I.1a.   Item 1 – The Court did not Modify Mary's
    right to receive information from the other
    conservator of the children but only stated the
    method of information transmittal………………………..16

    I.1b. Items 2, 3, 4, 5 and 8 - Removal of the *after
    consultation* requirement and insertion of

communication through OurFamilyWizard requirement did not modify the 2010 Order…………………………...18

Ie.  Changing Beginning and Ending Times of Mary's Week-end Visitation Did Not Modify the 2010 Order and If It Did, the Issue Was Tried By Consent……………………………………………………22

1.1c. Removal of Mid-Week Visitation……………………………..25

Reply to Issue II:……………………………………………………...13

II.    Response to Brief of Appellant's Issue No. II:  The trial court did not abuse its discretion when it ordered Mary to pay $50,000.00 in attorney fees and if it was error, it was invited error………………………….25

IIa.    Response to Brief of Appellant's Issue No. 11a:  The trial court did not abuse its discretion when it ordered Mary to pay $50,000.00 in attorney fees…………………………………………………27

IIb.    Response to Brief of Appellant's Issue No. IIb: The evidence is legally and factually sufficient to support a finding that Mary's suit was frivolous or designed to harass James………………………………….32

IIc.    Response to Brief of Appellant's Issue No. IIc: The evidence is legally and factually sufficient to support the court's finding that $50,000 is a reasonable amount in attorney's fees……………………………..27

IId.    Response to Brief of Appellant's Issue No. IId: The trial court's alleged errors regarding the fourteen modifications did not affect the attorney fees determination…………………………………………...34

III. There is no requirement attorney fees awarded
under Tex. Fam. Code §156.005 be reasonable……………….………36

PRAYER……………………………………………………………………….37

CERTIFICATE OF COMPLIANCE……………………………………………...38

CERTIFICATE OF SERVICE……………………………………………........39

APPENDIX 9 – Order for Counseling

APPENDIX 10 – Jamil "James" Kantara's Response to
Mary Lynn Gerke's Motion for Relief from the
Order to Carry Secondary Insurance and for the
Court to Select a Preferred Provider and Order XXXX
to Counseling and Request for Attorney Fees

APPENDIX 11 – Temporary Order on Mary Lynn Kantara
Gerke's Motion for Relief from the Order to Carry
Secondary Insurance and for the Court to Select
A Preferred Provider and Order XXXX to Counseling

APPENDIX 12 – Letter to Mary Gerke regarding Health
Insurance Premiums

APPENDIX 13 – Motions Filed by Mary Gerke

# Waiver of Oral Argument

Appellee waives any request for oral arguments.

# Reference Citation Guide

## The Parties

Appellant, Mary Lynn Kantara Gerke        "Mary"
     Petitioner in trial

Appellee, Jamil "James" Kantara        "James"
     Respondent and Counter-petitioner in trial

## The Record on Appeal

Clerk's record        "CR __" (page number)
     (filed February 26, 2014)

Reporter's Record Vol 1        "RR1 __" (page number:line)
     (filed February 24, 2014)

Reporter's Record Vol 2        "RR2 __" (page number:line)
     (filed February 24, 2014)

Reporter's Record Vol 3        "RR3 __" (page number:line)
     (filed February 24, 2014)

Reporter's Record Vol 4        "RR4 __" (page number:line)
     (filed February 24, 2014)

Reporter's Record Vol 5        "RR5 __" (page number:line)
    (filed February 24, 2014)

Reporter's Record Vol 6        "RR6 __" (page number:line)
    (filed February 24, 2014)

Reporter's Record Vol 7        "RR7 __" (vol: page number)
    (filed February 24, 2014)

Reporter's Record Vol 8        "RR8 __" (vol: page number)
    (filed February 24, 2014)

Reporter's Record Vol 9        "RR9 __" (vol: page number)
    (filed February 24, 2014)

Reporter's Record Vol 10        "RR10 __" (vol:page number)
    (filed February 24, 2014)

Reporter's Record Vol 11        "RR11 __" (vol:page number)
    (filed February 24, 2014)

Reporter's Record Vol 12        "RR12 __" (vol:page number)
    (filed February 24, 2014)

Reporter's Record Vol 13        "RR13 __" (vol:page number)
    (filed February 24, 2014)

Reporter's Record Vol 0        "RR0 __" (vol: page number)
    (filed October 30, 2014)

# Index of Authorities

**Cases**

*Arthur Andersen & Co. v. Perry Equip. Corp.*,
945 S.W.2d 812 (Tex. 1997)……………………………………………………...30

*Bailey v. Rodriguez*,
351 S.W.3d 424 (Tex. App.--El Paso 2011)…………………………………….28

*Cunningham v. Parkdale Bank*,
 660 S.W.2d 810 (Tex. 1983)……………………………………………….....15

*Davis v. Huey*,
571 S.W.2d 859 (Tex. 1978)……………………………………………………...29

*Diamond v. Soucie*,
239 S.W.3d 428 (Tex. App.—Dallas 2007, no pet.)……………………………...30

*Farish v. Farish*,
921 S.W.2d 538 (Tex. App.-- Beaumont 1996, no writ)………………………….27

*Flowers v. Flowers*,
407 S.W.3d 452 (Tex. App.--Houston [14th Dist.] 2013)………………...20, 21, 24

*Greene v. Young*,
174 S.W.3d 291 (Tex. App.--Houston [1st Dist.] 2005)…………………………24

*Hirczy v. Hirczy*,
838 S.W.2d 783 (Tex. App. – Corpus Christi 1992, writ denied…………………15

*Holley v. Holley*,
864 S.W.2d 703 (Tex. App.—Houston [1st Dist.] 1993, writ denied)………...28, 29

*In re A.B.P.*,
291 S.W. 3d 91 (Tex. App.—Dallas 2009, no pet.)………………………………30

In re B.L.D.,
113 S.W.3d 340 (Tex. 2003)…………………………………………………………..16

*In re D.S.*,
76 S.W.3d 512 (Tex. App.—Houston [14th Dist.] 2002, no pet.)……………...…..28

In re Hanker,
2013 Tex. App. LEXIS 7705 (Tex. App.--Houston [1st Dist.] June 25, 2013)......31

I*n re TMT Trailer Ferry, Inc.*,
577 F.2d 1296 (5th Cir. 1978)…………………………………………………….....31

In the Interest of Pecht,
874 S.W.2d 797 (Tex. App.--Texarkana 1994, no writ)…………………………….28

*Mansions in the Forest, L.P. v. Montgomery County*,
365 S.W.3d 314 (Tex. 2012)………………………………………………………...16

*Mattox v. Jackson*,
336 S.W.3d 759 (Tex. App.--Houston [1st Dist.] 2011)…………………………….29

*McGuire v. McGuire*,
4 S.W.3d 382 (Tex. App.—Houston [1st Dist.] 1999, no pet.)…………………….28

*McMahon v Zimmerman*,
433 S.W.3d 680 (Tex. App.—Houston [1st Dist.] 2014)………………………….31

*Protect Envtl. Servs. v. Norco Corp.*,
403 S.W.3d 532 (Tex. App.—El Paso, 2013, pet denied)………………………...31

*Pirtle v. Gregory*,
629 S.W.2d 919 (Tex. 1982)………………………………………………………...16

*Primrose Operating Co. v. Nat'l Am. Ins.* Co.,
382 F.3d 546 (5th Cir. 2004)……………………………………………………….31

*Ragsdale v. Progressive Voters League*,
801 S.W.2d 880 (Tex. 1990)………………………………………………………...31

*Smith v. Patrick W.Y. Tam Trust*,
296 S.W.3d 545 (Tex. 2009)………………………………………………………...31

*Sterling v. Alexander*,
99 S.W.3d 793 (Tex. App.--Houston [14th Dist.] 2003. pet. denied)……………..33

*Tittizer v. Union Gas Corp.*,
171 S.W.3d 857, (Tex. 2005)……………………………………………………..27

*Walker v. Packer*,
827 S.W.2d, 833 (Tex. 1992)……………………………………………………..28

*Wolters v. White*,
659 S.W.2d 885 (Tex. App.—San Antonio 1983, writ dism'd)…………………..27

*Worford v. Stamper*,
801 S.W.2d 108 (Tex. 1990)…………………………………………………...28

**Statues**

Tex. Fam. Code §106.002………………………………………………...13, 26, 27, 31, 36

Tex. Fam. Code §153.073………………………………………………...16, 18, 19

Tex. Fam. Code §153.132…………………………………………………….5, 14, 19

Tex. Fam. Code §153.312………………………………………………...22, 23, 25

Tex. Fam. Code §156.005………………………………………13, 26, 27, 31, 33, 36

**Rules**

Tex. R. App. P. 33.1(a)(1)(A)…………………………………………………..15

Tex. R. App. P 38.1(h)…………………………………………………….33

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Comes now, Jamil "James" Kantara ("James") and submits this his *Appellee's Brief.* Appellant is Mary Lynn Kantara Gerke ("Mary").

# STATEMENT OF FACTS

On May 11, 2011, Appellant, Mary, filed her suit for modification (RR4_ 71:16-17) against James seeking to modify a prior modification order dated April 15, 2010 (hereinafter the "2010 Order").[1] [2]

Trial began in October 2012 and ended in August 2013. On October 28, 2013, the Court entered its order (hereinafter the "2013 Order").[3] This is an appeal from the 2013 Order.[4]

## 1. *An Overview Of The Parties' Co-parenting From The Date Of The 2010 Order Through The Date Of Trial.*

### a. *Consultation Regarding the Children's Medical Providers*

Consultation between the parents regarding the children's medical providers was impossible. Mary was an impediment to obtaining medical providers for the children. (RR8_75:24-76:6) The acrimony between Mary and James was so

---

[1] Brief of Appellant Appendix 3

[2] Note: Mary filed her Petition to Modify one year after the 2010 Order.

[3] Brief of Appellant Appendix 2

[4] James agrees at the time the trial court entered its judgment in this case, only three of the children were still the subject of this suit. Presently, only two of the children are under the age of eighteen and subject to the Order.

horrific, it was affecting the pediatrician's ability to provide healthcare for the children. (RR6_29:21-30:22) James was unable to take the children to counselors or psychologists without Mary bombarding the counselor or psychologist with derogatory comments about James. (RR4_46:18-47:2) When James communicated to Mary about the children's medical appointments, Mary referred to James as Mr. Munchhausen. (RR7_22:22-25) James was unable to obtain counseling for JK4 because of Mary's interference. (RR4_45:19-47:20)

### b. *Complaints Filed Against the Children's Medical Providers*

When James sought medical evaluation or treatment for his children, complaints were filed against the children's medical providers. (RR7_83:5-84:4) Many of the children's medical providers refused to provide treatment for the children after receiving complaints or strongly worded letters from Mary.

> i. Dr. Linda Ewing-Cobb with the UT Medical Group made an assessment on JK4, the youngest child, regarding his special needs. (RR4_46:10-11) Mary filed a complaint against Dr. Ewing-Cobbs with the Medical Board. (RR4_61:18-62:6) (RR5_21:10-22:4) Dr. Ewing-Cobb refused to further treat the children after Mary filed a complaint against her. (RR4_45:21-46:18)

ii. Dr. Michael Monmouth, JK2's orthopedist, informed James a complaint was filed against him after JK2's successful surgery. (RR3_54:22-55:6) Mary denies she filed the complaint, but she suspects the complaint was filed by her boyfriend, Dr. Gerber. (RR7_29:23-30:12)

iii. Dr. Martha Kennedy, a noted child psychologist, would not see or treat the children after receiving strong-language emails from Mary. (RR3_84:22-85:20)

iv. Dr. Hope Moser, a Ph.D. nurse practitioner, refused to provide any more assistance to the children because she felt she was being harassed and abused and her professional and personal capacity was being attacked. (RR8_5:20-8:11)

v. Dr. Kit Harrison, a child psychologist hired by James to evaluate the children, wasn't going near the children to evaluate them unless James sought specific court protection from Mary. (RR6_63:1-6)

### c. *Mary's Interference with the Children's Education*

i. Mary complained about and had the elementary school diagnostician removed from the children's care. (RR3_93:21-94:14)

ii. Mary attempted to make changes to the children's school schedules even though James had the exclusive right to make educational decisions. (RR3_19:13-21:6)

iii. Mary interfered with James' exclusive educational rights by telling school officials they are required to confer with Mary before making decisions regarding the children. (RR3_34:3-11)

iv. Mary threatened James to go to court if James changed the school the children attended. (RR3_36:14-37:12)

d. *Mary's Harassment of James.*

i. Mary told the children's school James was not feeding the children. (RR7_11:12-12:16)

ii. Mary called the police and told them James had weapons in the house (RR6_80:13-22) because she *felt* he may have weapons in the house. (RR6_81:7-21)

iii. Mary told the child's physician JK1 was not being fed. (RR6_85:25-86:2)

iv. Report made to CPS James was abusing the children. (RR7_13:13-14:2)

v. Report made to CPS James was sexually abusing his daughter (RR7_14:18-25).

vi. Report made to CPS James had a history of psychological and physical violence. (RR5_104:1-3)

vii. Mary did not recall reporting to school personnel the children had hygiene problems, but Mary sent shampoo and other hygiene items to the school nurse for the children. (RR7_15:20-16:24)

viii. Mary refused James permission to obtain the children's passports claiming "*good cause*." (RR3_66:2-15) When questioned why, Mary responded because James is of Lebanese descent. (RR5_74:11-15)

### 2. *Mary's Requested Relief: An Overview*

Mary, in her appellate brief, lists only nine (9) of her requested modifications.[5] Mary fails to remember all the modifications she requested. *Mary's Fourth Amended Petition to Modify Parent-Child Relationship* lists the following contested issues.[6] [7]

9.2 Rights and Duties –

Mary requested the following independent rights regarding the children under Tex. Fam. Code §153.132:

(i) right to designate the primary residence of the children;

(ii) right to receive child support for the support of the children;

---

[5] Brief of Appellant Pages 4, 5
[6] Brief of Appellant Appendix 5 Pages 3-7
[7] Please note some of Mary's issues were already encompassed in the 2010 Order and were not contested and Mary's requested changes have been summarized for brevity.

(iii)    right to consent to medical, dental and surgical treatment involving invasive procedures;

(iv)    right to consent to psychiatric and psychological treatment; and

(v)    right to make educational decisions;

9.3.1  Non-Primary Conservator -

Mary requested in the event she is not named as the conservator with the right to designate the primary residence of the children:

(i)    She be granted expanded possession order with exchanges at school, including weekends and holidays which includes overnight mid-week possession.

9.4    *Electronic Access* –

Mary requested unrestricted communications by electronic means with the children.

9.5    *Passports and Foreign Travel* –

Mary requested removal of the passport provision and the children's travel be limited to the United States.

9.6    Mary requested alternating weeks of summer possession.

9.8    Mary requested Court ordered counseling for *all* the children.

10. Support -

Mary requested termination of her child support obligation.

10.1 Mary requested if she is named primary conservator, James pay child support; and

10.3 Termination of her obligation to carry secondary health insurance on the children.

11. Permanent Injunctions -

Mary requested the following permanent injunctions against James:

11.1 Enjoining James from obtaining passports for the children and from international travel with the children.

11.3 Enjoining James from entering JK3's bathroom when JK3 is present without JK3's express permission.

11.4 Enjoining James from biting the children.

11.6 Require James to provide healthcare EOBs within ten (10) days of receipt.

11.7 Enjoining James from punishing the children for reporting any concerns related to incidents with either parent to the other parent, or any counselor, teacher, CPS worker or other professional.

11.8 Enjoining James from forcing the children to wait for him after school or activities at his friends' house.

11.9 Enjoining James from changing the children's schools.

13. *Unreimbursed Healthcare Expenses of the Children -*

Confirmation of unreimbursed healthcare expenses in the amount of $1,549.93.

14. *Costs Related to Violation of Court Orders -*

Mary requested James pay any past or future costs incurred by Mary related to violations of and/or failure to follow the Court's order.

15. *Amicus Fees -*

Mary requested James pay the amicus fees and costs.

16. *Attorney's Fees -*

Mary requested James pay her attorney fees.

17. *Costs -*

Mary requested James pay her costs including any out-of-pocket expenses.

In addition to the above, Mary requested additional specific modifications during trial. (4RR_66:16-69:5) Specifically, Mary requested:

a. Summer vacation be split with 35 days to be divided into three parts to the non-primary parent;

- 8 -

b.  Electronic communication between the kids and both parents contain common parental controls and cell phones always allowed number and GPS;

c.  James to bear the cost of JK4's counseling with Dr. Brandon or in the alternative, usage of the preferred insurance providers and that the parents alternate taking JK4;

d.  Clarity regarding usage of preferred providers and providing other parent with information and EOBs; and

e.  Parties split the children tax exemption.

## 3.  *The 2013 Temporary Modification Orders:  An Overview*

### a.  *Counseling*

Mary states the Court ordered counseling for the children over the objection of James.  Mary has misinformed this Court.  Mary refers to an Order of Counseling dated April 9, 2013.  The Order was issued on the Court's own initiative under T.R.C.P. 204.4.[8]  (CR10) The Order provided James was to select the psychologist or counselor to examine and evaluate and treat the children. Neither party could call the counselor as a witness at trial and the psychologist nor counselor's records were protected from discovery.  Each party was to pay one-half of the cost.

---

[8] Appellee's Brief Appendix 9

James selected Dr. Michael Brandon who had been treating JK4 for over six months. Mary objected to the continued use of Dr. Brandon because he was not a preferred provider under James' medical plan. James explained to Mary, Dr. Brandon's total fees would be approximately equal to the insurance deductible amount owed under his insurance.[9] CR15 The Court subsequently approved counseling by Dr. Brandon.[10] (CR27)

### b. Secondary Health Insurance

Mary states the Court relieved her of her obligation to carry secondary health insurance on the children only after a contested hearing. This statement is true as phrased but what Mary omits is the fact James had already agreed to release her from her obligation to carry secondary health insurance as long as Mary reimbursed his cost of the children's health insurance premium.[11] CR21 The only issue was what percentage of the cost of the children's health insurance premium was Mary going to pay. James wanted full reimbursement; Mary wanted to pay nothing. The Court divided the cost of the children's health insurance premium between the parties.

---

[9] Appellee's Brief Appendix 10
[10] Appellee's Brief Appendix 11
[11] Appellee's Brief Appendix 12

*4.* *The Final Trial*

Mary, in her appellate brief, insinuates the Court granted the majority of Mary's requested relief and denied the majority of James' requested relief. A quick review of Mary's requested relief will debunk this myth perpetrated by Mary.

The Court **denied** the following modifications requested by Mary:

1. the right to designate the primary residence of the children;

2. the right to collect child support from James;

3. the right to consent to medical, dental, or psychological treatment of the children;

4. the right to make educational decisions on behalf of the children;

5. expanded possession order with the children;

6. overnight mid-week possession;

7. unrestricted communication with the children by electronic means;

8. removal of the passport provision and enjoining James from applying for passports for the children;

9. limiting the children's travel to the United States;

10. alternating weeks of summer possession of the children between the parties;

11. restricting summer vacation of the non-primary parent;

12. continuing counseling for *all* the children;

13. permanent injunctions against James;

14. confirmation of unreimbursed health care expenses of the children;

15. require the children's electronic communication contain parental controls and cell phones always allowed number and GPS;

16. parties to split the tax exemption for the children;

17. James pay 100% of the amicus fees; and

18. James pay attorney fees and costs.

## 5. Attorney Fees: An Overview

At the conclusion of the trial, Judge Newey told Mary on the record she had been an obstructionist almost from the day following the hearing in the previous case in Galveston. (RR8_136:19-137:5) The Court reiterated its obstructionist finding in its Findings of Fact 8[12]. Mary has made it abundantly clear to James she is going to continue her obstructionist actions until she gets what she wants. (RR8_88:2-14)

At trial James' counsel testified James had incurred attorney fees and expenses in the amount of $103,811.93. (RR8_34:19-25) The court found in its Additional Findings of Fact 4 and 5 Mary had frivolously filed her suit for

---

[12] Brief of Appellant Appendix 7

modification and the suit for modification was designed to harass James[13]. The Court in its Additional Conclusions of Law 2 awarded reduced attorney fees under Tex. Fam. Code §156.005 and §106.002 in the amount of $50,000.00, which the court found to be reasonable and necessary.[14]

# SUMMARY OF THE ARGUMENT

Reply to Issue I: The trial court's final Order in Suit to Modify Parent-Child Relationship did not violate Mary's due process rights. Mary alleges fourteen points of error with regard to modifications. Mary failed to preserve error on thirteen of those points and thus waived error. In addition, if the court finds Mary did not waive error, ten of Mary's alleged modifications were not modifications but merely clarifications to the previous Order.

Reply to Issue No. 2: The trial court did not abuse its discretion when it ordered Mary to pay $50,000.00 in attorney fees and if it was error, it was invited error.

---

[13] Brief of Appellant Appendix 8
[14] Brief of Appellant Appendix 8

# Argument & Authorities

**I.** **Response to Brief of Appellant's Issue No. 1: The trial court's final "Order in Suit to Modify Parent-Child Relationship" did not violate Mary's due process rights.**

### Ia. –Ic. Mary Failed To Preserve Error

Mary argues the trial court made fourteen modifications[15] to the 2010 Order which violated Mary's due process rights, have no support in the pleadings, and were not tried by consent. Mary failed to preserve error with respect to 1-11 and 13 -14.

At the conclusion of the trial, the Court awarded James sole managing conservatorship of the children. At the motion for entry of judgment/motion for reconsideration, counsel for Mary pointed out there were no pleadings on file to remove the parties as joint managing conservators. (RR9_15:16-19) The Court sustained the objection and retained the parties as joint managing conservators; however, the Court granted James additional exclusive rights regarding the children. The Court asked counsel for Mary which rights she was specifically worried about under TFC §153.132. (RR9_10:23-24) Counsel for Mary replied the right to consent to marriage and enlistment, the right to represent the children in legal actions, and the right to service and earnings of the children. (RR9_10:25-

---

[15] Brief of Appellant Pages 10-13

12:6) Mary failed to specifically object there were no pleadings on file to support the modified rights, thus waiving any error. In addition, Mary did not object to alleged modifications 1, 2, 3, 4, 5, 8, 10, 11, 13 or 14. Appellee concedes Mary did preserve with respect to alleged modification 12 regarding Mary's mid-week possession by specifically pointing out there were no pleadings on file requesting Mary's mid-week visitation be terminated.

Mary cites *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 812-813 (Tex. 1983) for the proposition the trial court erred in entering relief which was not pled for. Mary failed to preserve error, if any, because, unlike the appellant in *Cunningham*, Mary did not specifically present her complaint to the trial court. The Rules of Appellate Procedure require, as a prerequisite to presenting a complaint for appellate review, the record must show that "the complaint was made to the trial court by timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint." *Tex. R. App. P. 33.1(a)(1)(A); Hirczy v. Hirczy*, 838 S.W.2d 783, 785 (Tex. App.--Corpus Christi 1992, writ denied).

In an effort not to mislead this Court, James acknowledges Mary filed a *Motion for New Trial*, which generally stated the Court modified rights and duties under Chapter 153 of the Texas Family Code. Mary failed to identify which

- 15 -

modifications for which there no pleadings to support the relief granted. Mary's failure deprived the Court the ability to cure the alleged defect.

A party should not be able to neglect to complain about an error at trial and then surprise his opponent on appeal. *Mansions in the Forest, L.P. v. Montgomery County*, 365 S.W.3d 314, 317 (Tex 2012), citing *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003) and *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982).

This Court should deny Mary's appeal regarding alleged modifications 1-11 and 13-14 for failure to preserve error.

**I.1    The Court Did Not Modify Items 1, 2, 3, 4, 5, 8, 13 and 14.**

**I.1a.    Item 1 – The Court did not Modify Mary's right to receive information from the other conservator of the children but only stated the method of information transmittal.**

|   | Tex. Fam. Code | 2010 Order[16] | 2013 Order[17] |
|---|---|---|---|
| 1 | §153.073 | Both parties had the right to receive information from any other conservator of the children concerning the health, education and welfare of the children | Mary has the right to receive information from any other conservator of the children concerning the health, education and welfare of the children at the option of Jamil "James" Kantara |

---

[16] Brief of Appellant Appendix 3
[17] Brief of Appellant Appendix 2

During the two and one-half year interval between the 2010 Order and the commencement of trial in 2013, James sent Mary over 2,000 pages of emails informing Mary of the children's health, education, and welfare. (RR8_98:23-99:10)  This amount averaged over 2 emails a day, 7 days a week, and 365 days a year.  The parties continually argued whether James was providing Mary sufficient timely information concerning the children.  In order to stop the bickering, the court ordered James to provide information to Mary through OurFamilyWizard[18] and inform Mary in a timely manner of significant information concerning the health, education and welfare of the children.[19]  The court did not modify Mary's rights under the 2010 Order to: (i) access the children's medical, dental, psychological, and educational records; (ii) consult with physicians, dentists, or psychologist of the children; (iii) consult with school officials concerning the children's welfare and educational status including school activities; (iv) attend school activities; (v) be designated in the children's records as the person to be notified in case of emergency; (vi) consent to medical and dental treatment during an emergency involving immediate danger to the health and safety of the children;

---

[18] Brief of Appellant Appendix 2 page 26
[19] Brief of Appellant Appendix 2 page 4

and (vii) to manage the estate of the children to the extent the estates have been created by Mary or her family.[20]

The trial court did not modify Mary's right to receive information from James concerning the children but only required the information be posted on OurFamilyWizard. It is important to note neither party is appealing this method of information exchange. The 2013 Order simply states James may, at his option, provide redundant information concerning the children to Mary outside of OurFamilyWizard.

**I.1b.** **Items 2, 3, 4, 5 and 8 - Removal of the *after consultation* requirement and insertion of communication through OurFamilyWizard requirement did not modify the 2010 Order**

| | Tex. Fam. Code | 2010 Order[21] | 2013 Order[22] |
|---|---|---|---|
| 2 | §153.073 | Both parties had the right to confer with the other parent to the extent possible before making a decision concerning the health, education and welfare of the children | Mary only has the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children at the option of Jamil "James" Kantara |

---

[20] Brief of Appellant Appendix 2 Pages 3 and 4
[21] Brief of Appellant Appendix 3
[22] Brief of Appellant Appendix 2

| 3 | §153.073 | James had the exclusive right after consultation with Mary to consent for the children to medical and dental care not involving an invasive procedure | James awarded exclusive right with option to consult with Mary |
|---|---|---|---|
| 4 | §153.132 | James had the exclusive right after consultation with Mary to consent to medical, dental and surgical treatment involving invasive procedure | James awarded exclusive right with option to consult with Mary |
| 5 | §153.132 | James had the exclusive right after consultation with Mary to consent to psychiatric and psychological treatment of the children | James awarded exclusive right with option to consult with Mary |
| 8 | §153.132 | James had the exclusive right to make decisions regarding the children's education after consultation with Mary | James awarded exclusive right to make decisions regarding the children's education (i.e. no obligation to consult with Mary) |

The conflict between James and Mary has gone on for nine and a half years. (RR8_87:14-21) The prior modification 2010 Order granted James certain exclusive rights with regard to the children but conditioned those rights upon James *consulting* with Mary. In addition, the 2010 Order gave each parent the right to confer with the other parent *to the extent possible* before making a decision concerning the health, education, and welfare of the children.

James sent Mary over 2,000 pages of emails consulting with and informing Mary of issues regarding the children's health, education, and welfare.

- 19 -

(RR8_98:23-99:10)  Mary responded by making derogatory comments about James. (RR8_65:12-13)  Mary seldom communicated with James in a productive fashion. (RR8_124:23-125:8)  Mary or her boyfriend filed numerous complaints against the children's medical providers, school officials, and James.[23]  James tried every type of communication possible in an effort to effectively communicate with Mary. (RR8_125:1-8)  James testified without court intervention, the conflict will not stop. (RR8_87:14-21)

The parties are not communicating effectively regarding scheduling the children's medical appointments (RR3_89:10-91:17), making educational decisions on behalf of the children (RR3_19:4-21:6, RR3_24:9-23), and choosing medical providers for the children. (RR2_94:10-95:10)  Mary even complains the communication between the parties is poor. (RR7_71:15-23)

Looking at the record, it was plain to see consultation between the parents without a stated method was not working, so the Court provided a method of consultation between the parents, which was the use of OurFamilyWizard.

Appellee is well aware of the recent *Flowers* decision regarding notice pleadings and trial by consent. *Flowers v. Flowers*, 407 S.W.3d 452 (Tex. App. Houston [14th Dist.] 2013).  *Flowers* is distinguishable in two important respects.

---

[23] See Appellee's Statement of Facts

First, in *Flowers*, the Court completely removed the requirement for consultation prior to Ms. Flowers exercising her exclusive rights contained in the original order. In the instant case, the Court ordered James to utilize the notification and communication facilities of "OurFamilyWizard" to consult with Mary. The Court did not remove the consultation requirement but only stated which method should be used. Mary does not appeal the use of "OurFamilyWizard."

Second, in *Flowers*, the original order did not condition Ms. Flowers' requirement of consultation with Mr. Flowers. In the instant case, James was only required to confer with Mary *to the extent possible* before making a decision concerning the health, education, and welfare of the children. There is so much "bad blood" between Mary and James, the Court simply fashioned a method wherein the parties could *confer with one another to the extent possible*.

Lastly, the parties tried the issue of method of consultation by consent. Mary claimed James was not consulting her before making decisions regarding the children. Mary and the Amicus Attorney both questioned James regarding communication with Mary. (RR8_98:23-102:2, RR8_123:4-16, RR8_123:23-125:8) The Amicus specifically asked James what was the best method of communication between James and Mary. (RR8_124:6-8) James stated he was at a

loss what to do. (RR8_125:1-8)  James stated further without court intervention, the conflict would continue. (RR8_87:14-21)

Mary argues it was abuse of discretion for the court to provide James has the right to consent to medical, dental, and surgical procedures on behalf of the children *with the option to consult with Mary.* James is still required to consult with Mary prior to consenting to medical procedures just like the 2010 Order, but the 2013 Order requires the consultation go through "OurFamilyWizard." The trial court specifically addressed Mary's concerns regarding the children's medical information by requiring James to post the information on OurFamilyWizard. (RR9_7:5-10:2)

Even if the Court finds the requirement of consultation through "OurFamilyWizard" is a modification, the issue was tried by consent and neither party is appealing this method of consultation.

### Ie. Changing Beginning and Ending Times of Mary's Week-end Visitation Did Not Modify the 2010 Order and If It Did, The Issue Was Tried By Consent

|  | Tex. Fam. Code | 2010 Order | 2013 Order |
|---|---|---|---|
| 13 | §153.312 | Mary's weekend periods of possession during the school term ended at the time school resumes after the weekend. | Mary's weekend periods of possession during the school term end at 6:00 p.m. on Sunday. |

| 14 | §153.312 | Mary's weekend periods of possession that do not occur during school term end at 8:00 a.m. on the following Monday 1SCR_13 | Mary's weekend periods of possession that do not occur during the school term end at 6:00 p.m. on Sunday CR_37 |

Since the 2010 modification order, the children's well-being suffered when the children were at Mary's house on a school night. The Court found in its Finding of Fact 5 the conduct of Mary had negatively affected the children and continuation of Mary's mid-week possession would harm the children.[24]

The issue of Mary's weekend possession schedule was tried before the Court. (RR8_125:9-126:11) The children do not have peace at Mary's house. The children's homework was not completed when Mary returned the children to school after her weekends. (RR4_36:18-24) The children came to James' house upset, complaining, even crying after Mary's possession of the children. (RR4_57:21-58:17)

Mary referred to JK1 as simple and simple minded (RR6_19:3-14). JK2 was missing school, exhausted, stressed out, and fatigued. (RR6_26:7-12) JK4 requires structure and stability and became upset and started crying after Mary told him (i) he is autistic (RR8_11:21-22) and he should be a plumber (RR8_23:11); and (ii) witnessed his older siblings being thrown out of Mary's house. (RR8_12:2-20) (RR8_13:2-11)

---

[24] Brief of Appellant Appendix 7

With respect to the Sunday return time of the children, the Court did not significantly lessen Mary's possession time but basically switched the pick-up and delivery time. The Court adjusted Mary's pickup and return time from Fridays at 6:00 p.m. until the children returned to school on the following Monday to Fridays when the children are dismissed from school until 6:00 p.m. on Sunday. This change was implemented so Mary could begin her weekend possession with the children earlier and the children could settle down, relax, and have some peace on school nights.

Appellee agrees a trial courts' judgment must conform to the pleadings; however, if issues are not raised by the pleadings and are tried by express or implied consent of the parties, these issues will be treated as if they had been raised by the pleadings. *Flowers v. Flowers*, 407 S.W.3d 452, 458 (Tex. App.--Houston [14th Dist.] 2013). To determine whether the issue was tried by consent, the Court must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Greene v. Young*, 174 S.W.3d 291 (Tex. App.--Houston [1st Dist.] 2005).

With respect to the pickup and return time of the children, Appellee does not believe the Court modified the 2010 Order but merely adjusted the times for the benefit of the children. Assuming arguendo this Court finds there was a modification, Appellee would argue the parties tried the issue by consent.

### 1.1c. Removal of Mid-Week Visitation

|    | Tex. Fam. Code | 2010 Order[25] | 2013 Order[26] |
|----|----------------|----------------|----------------|
| 12 | §153.312 | Mary had right to possession of the children from 5:00 p.m. until 8:00 p.m. every Wednesday | Mary no longer has Wednesday period of possession |

With respect to the removal of Mary's three-hour mid-week possession, Mary testified James didn't think the children should have mid-week visitation with Mary. (RR5_28:16-18)  Although there is some evidence the parties argued over whether Mary should have overnight mid-week possession of the children, Appellee concedes after a thorough search of the record, Appellee cannot point this Court to a reference wherein the parties specifically tried Mary's three-hour mid-week possession other than Mary's testimony.

**II.     Response to Brief of Appellant's Issue No. II:  The trial court did not abuse its discretion when it ordered Mary to pay $50,000.00 in attorney fees and if it was error, it was invited error.**

At the conclusion of the trial, the trial court ordered Mary to pay $50,000.00 in attorney fees and costs.

---

[25] Brief of Appellant Appendix 3
[26] Brief of Appellant Appendix 2

The trial court filed its *Findings of Fact and Conclusions of Law* on March 27, 2014.[27] The Court found counsel for James requested and proved attorney fees and expenses in the amount of $108,811.93 and $50,000.00 were reasonable and necessary and in the best interest of the children. Conclusion of Law 15 granted judgment in the amount of $50,000.00 in attorney fees against Mary and in favor of James' counsel. On October 10, 2014, counsel for Mary represented to the Court she had not received notice the Court issued its *Findings of Fact and Conclusions of Law.* (RR0_5:15-17) Based upon counsel's representation, the parties agreed to extend the deadline for counsel for Mary to submit her requested additional findings. (RR0_4:21-5:14)

On October 30, 2014, the Court entered its *Additional Findings of Fact and Conclusions of Law*[28] which were requested by Mary. Conclusion of Law 9 provides counsel for James:

> "… is granted judgment for reasonable and necessary attorney's fees, expenses and costs in the amount of $50,000.00 pursuant to Tex. Fam. Code §106.002 and Tex. Fam. Code §156.005."

The doctrine of invited error provides that a party cannot complain on appeal about an action or ruling which she requested the trial court to do or make.

---

[27] Brief of Appellant Appendix 7
[28] Brief of Appellant Appendix 8

*Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 861 (Tex. 2005). Mary is complaining about a ruling, which she specifically requested.

Mary cannot claim the Court granted judgment against her pursuant to Tex. Fam. Code §106.002 and Tex. Fam. Code §156.005 when she herself requested the ruling. Likewise, Mary cannot complain the $50,000.00 in attorney fees are not reasonable and necessary when she herself requested the specific ruling.

**IIa.** **Response to Brief of Appellant's Issue No. 11a: The trial court did not abuse its discretion when it ordered Mary to pay $50,000.00 in attorney fees.**

**and**

**IIc.** **Response to Brief of Appellant's Issue No. IIc: The evidence is legally and factually sufficient to support the court's finding that $50,000 is a reasonable amount in attorney's fees.**

At the conclusion of the trial, the court awarded James attorney fees in the amount of $50,000.00 pursuant to Tex. Fam. Code §106.002 and §156.005 which the court found to be reasonable and necessary.[29][30]

Texas Family Code §106.002 and §156.005 allow for the award of attorney's fees. The trial court has discretion to render judgment for attorney's fees and costs in any suit affecting the parent-child relationship. *Farish v. Farish*, 921 S.W.2d 538, 546-47 (Tex. App.--Beaumont 1996, no writ); *Wolters v. White*,

---

[29] Brief of Appellant Appendix 7 (Findings of Fact and Conclusions of Law)
[30] Brief of Appellant Appendix 8 (Additional Findings of Fact and Conclusions of Law)

659 S.W.2d 885, 887-88 (Tex. App.—San Antonio 1983, writ dism'd); *In the Interest of Pecht*, 874 S.W.2d 797, 803 (Tex. App.--Texarkana 1994, no writ).

Generally, unless the complaining party can demonstrate a clear abuse of discretion, orders arising from a suit affecting the parent-child relationship will not be disturbed on appeal. *Worford v. Stamper*, 801 S.W.2d 108 (Tex. 1990); *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.). A court abuses its discretion when it acts arbitrarily, unreasonably, or without regard to guiding rules or principles. *McGuire v. McGuire*, 4 S.W.3d 382, 384 (Tex. App.—Houston [1st Dist.] 1999, no pet.) In determining whether an abuse of discretion has occurred, the appellate court views the evidence in a light most favorable to the trial court's decision and indulge every legal presumption in favor of its judgment. *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). When a court fails to analyze or apply the law correctly, it abuses its discretion. *Walker v. Packer*, 827 S.W.2d, 833 (Tex. 1992). An allegation of legal or factual insufficiency is not treated as an independent ground of error in this context because the appropriate standard of review is abuse of discretion. *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence. *Bailey v. Rodriguez*, 351 S.W.3d 424, 426 (Tex.

App.--El Paso 2011) citing *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). In making its decision, the appellate court may not substitute its judgment for that of the trial court unless the trial court's decision was so arbitrary it exceeded the bounds of reasonableness. *Mattox v. Jackson*, 336 S.W.3d 759, 762 (Tex. App.-- Houston [1st Dist.] 2011). Abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Holley v. Holley*, 864 S.W.2d 703 (Tex. App.--Houston [1st Dist.] 1993, writ denied).

Counsel for James testified he had been licensed to practice law in Texas since 1984 and has been Board Certified in Family Law since 2000. He further testified he charges at the rate of $350.00 per hour, said fee being customary in Harris County for attorneys with his experience but may be on the low side, that it was necessary for James to hire him, he began representing James in this case in 2011, and this case required an inordinate amount of time because of all the frivolous motions filed by Mary. (RR8_33:23-35:20) (RR8_35:24-36:9-14) His attorney fee records were offered, proved, and admitted into evidence as R-60 without objection. (RR10_3-27) (RR11_3-27) (RR12_3-29) Lastly, he testified Mary filed over 57 motions (RR13_3-5) which he offered, proved and admitted into evidence as R-90[31]. (RR13_R-90) Mary cross-examined counsel for James at

---

[31] Appellee's Brief Appendix 13

length but did not question the hourly rate, whether the work was performed, or the reasonableness of the fees despite having the opportunity to do so.

The reasonableness and necessity of the fees is a fact question. *Diamond v. Soucie*, 239 S.W.3d 428, 431 (Tex. App.—Dallas 2007, no pet.). Factors to guide a trial court in determining whether the fees are reasonable and necessary include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly; (2) the likelihood the acceptance of the particular employment will preclude other employment; (3) the customary fees charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship; (7) the experience, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Diamond*, 239 S.W.3d at 431. The court need not receive evidence on each of these factors, but may look at the entire record, the evidence presented on reasonableness, the common knowledge of the participants as lawyers and judges, and the relative success of the parties. *In re A.B.P.*, 291 S.W. 3d 91, 98 (Tex. App.—Dallas 2009, no pet.) Clear, direct, uncontroverted evidence of fees will be

taken as true as a matter of law when such evidence is reasonable and credible and where the opposing party had the means and opportunity to disprove the testimony but failed to do so. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547-48 (Tex. 2009) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990)).

Judges can draw on their common knowledge and experience as lawyers and as judges in considering the testimony, the record, and the amount in controversy in determining attorney's fees. *McMahon v Zimmerman*, 433 S.W.3d 680 (Tex. App.—Houston [1st Dist.] 2014) (citing *Protect Envtl. Servs. v. Norco Corp.*, 403 S.W.3d 532, 543 (Tex. App.—El Paso, 2013, pet denied) *see also In re Guardianship of Hanker*, 2013 Tex. App. LEXIS 7705 (Tex. App.--Houston 1st Dist. June 25, 2013), no pet.) (holding that trial judge may "draw on her knowledge of the case, review of the court file, and her experience in other … proceedings in determining whether a requested fee is reasonable"). Trial courts are considered experts on the reasonableness of attorney's fees. *McMahon* at 693 (citing *Primrose Operating Co. v. Nat'l Am. Ins.* Co., 382 F.3d 546, 562 (5th Cir. 2004) (holding that trial courts are experts on reasonableness of attorney's fees; I*n re TMT Trailer Ferry, Inc.*, 577 F.2d 1296, 1304 (5th Cir. 1978).

The trial court did not abuse its discretion when it awarded James attorney fees pursuant to Tex. Fam. Code §106.002 and §156.005. Likewise, the trial court

did not abuse its discretion when it found the sum of $50,000.00 was a reasonable and necessary attorney fee in this matter.

**IIb.     Response to Brief of Appellant's Issue No. IIb:  The evidence is legally and factually sufficient to support a finding that Mary's suit was frivolous or designed to harass James.**

At the conclusion of the trial, the court found the modification suit filed by Mary was frivolous and designed to harass James.

The conflict between James and Mary has been going on for nine and a half years and without court intervention, the conflict will continue. (RR8_87:14-21) Since the 2010 modification, Mary has been attempting to drain James' resources through endless litigation and ultimately force James to relinquish custody.  Even if Mary could establish her suit was not frivolous, it does not foreclose the possibility the suit was designed to harass James.

The trial court found there was overwhelming evidence Mary had been an obstructionist regarding the welfare of the children since the prior modification proceeding.[32]  (RR8_136:21-137:5) Mary or her boyfriend filed numerous complaints against the children's medical providers, filed complaints with CPS and the police against James, interfered with the children's educational decisions, and embarked on a general campaign to harass James.[33] As further proof of Mary's

---

[32]  Brief of Appellant Appendix 7 (Finding of Fact and Conclusion of Law –Finding  of Fact 4)

[33] See Appellee's Statement of Facts

continual harassment of James, three days after James told Mary he was *thinking* about changing one of the children's schools, Mary filed her *Motion to Modify*. (RR7_32:10-22)

The Court's award of attorney fees pursuant to Tex. Fam. Code §156.005 is not a sanction and the Court need not provide specifics to justify the finding Mary's modification suit was frivolous or for the purpose of harassing James. Additionally, Mary fails to make any argument or cite any authority in her brief requiring the Court to file specific findings supporting its finding her suit was filed frivolously and for the purpose of harassment of James. Therefore, Mary has waived this issue on appeal. TEX. R. App. P. 38.1(h): *Sterling v. Alexander*, 99 S.W.3d 793, 798-99 (Tex. App.--Houston [14th Dist.] 2003, pet. denied).

Mary fails to take responsibility for her past actions. History suggests Mary's motion to modify was consistent with an overall pattern of harassing behavior directed at prolonging litigation and draining James' resources. The trial court had the opportunity to view the witnesses and hear all the evidence before making its determination. Mary is now asking this court to substitute its opinion for that of the trial court. The evidence is legally and factually sufficient to sustain the court's finding Mary's suit was filed frivolously and for the purposes of harassing James.

**IId. Response to Brief of Appellant's Issue No. IId: The trial court's alleged errors regarding the fourteen modifications did not affect the attorney fees determination.**

At the conclusion of the trial, after hearing the testimony and reviewing the billing records of counsel for James, the trial court awarded James the sum of $50,000.00 as reasonable and necessary attorney fees.[34]

Mary argues paralegal and legal assistant's billings were included in the total attorney fee request. Mary argues counsel for James failed to offer testimony regarding his paralegal and legal assistant's qualifications and, therefore, said amounts should be reduced from the total fee award. Mary admits if the total amount of legal assistant and paralegal fees were subtracted from the total amount requested, James's attorney fees would total $78,062.93[35]. Since the trial court only awarded James $50,000.00 in attorney fees, this issue is without merit.

Lastly, Mary argues the attorney fee award is presumably based on the fourteen modifications, which Mary is appealing. There is no evidence in the record to support Mary's presumption. Mary fails to consider the majority of the trial was centered on her change of custody request to become the primary conservator of the children. Mary's change of custody request affected all fourteen points, which she is now complaining of as well as many others. The Court denied Mary's request to change custody and many of the other additional modifications

---

[34] Brief of Appellant Appendix 7 and 8
[35] Brief of Appellant Page 40

- 34 -

she was requesting.[36]  The court became so disillusioned with Mary's behavior, it found Mary to be an obstructionist and that her suit was filed frivolously and for the purpose of harassment of James.

Mary argues the court granted the majority of her requested modifications so James' attorney fees should be reduced.   Mary fails to remember the following:

(i)     The court denied her change of custody request;

(ii)    JK4 had been in counseling with Dr. Brandon six months prior to the court entering its order for counseling[37];

(iii)   James agreed to relieve Mary of her secondary health insurance obligation so long as she reimbursed him for the cost of the insurance premium prior to Mary seeking a court order[38]; and

(iv)    James has no intention of taking the children to the Middle East.

No matter how Mary spins it, the overriding requested modification is Mary's request to change custody, which James successfully defended.  It was within the court's discretion to grant James attorney fees and it was not an abuse of discretion for the court to find $50,000.00 in attorney fees as reasonable and necessary for James to defend this case.

---

[36] Brief of Appellant
[37] Appellee's Reply Brief Appendix 9
[38] Appellee's Reply Brief Appendix  10, 12

### III. There is no requirement attorney fees awarded under Tex. Fam. Code §156.005 be reasonable.

Tex. Fam. Code §106.002[39] provides a court may render a judgment for *reasonable* attorney fees and expenses under Title 5 of the Family Code. Tex. Fam. Code §156.005[40] provides the court may assess attorney fees as costs if the court finds a modification suit was filed frivolously or designed to harass a party.

The legislature, when drafting Tex. Fam. Code §156.005, could have put in a reasonable requirement for attorney fees, but did not. Appellee has researched this issue and is unable to point this court to any cases wherein the reasonableness of attorney fees under Tex. Fam. Code §156.005 was specifically appealed.

Appellee argues if the trial court finds a modification suit was filed frivolously or for the purpose of harassment and if (i) it is within the discretion of the trial court to award attorney fees under Tex. Fam. Code §156.005; and if (ii) there is competent testimony regarding the total amount of the attorney fees; and if (iii) there is no requirement for proof of reasonableness, a trial court's award of attorney fees pursuant to Tex. Fam. Code §156.005 cannot be disturbed as an abuse of discretion based on reasonableness of the fee award.

---

[39] Brief of Appellant Appendix 1
[40] Brief of Appellant Appendix 2

## Conclusion and Prayer

For all the foregoing reasons, Jamil "James" Kantara respectfully requests this court to overrule Appellant's issues and affirm the trial court's judgment.

Respectfully submitted,

Wilfried P. Schmitz & Associates, P.C.

BY: _/s/ Wilfried Schmitz_____
　　　Wilfried P. Schmitz
Texas Bar No. 17778700
17040 El Camino Real, Suite 400
Houston, Texas  77058
Phone:  (281) 486-5066
Email:  Court_Documents@schmitzlaw.com
Attorney for Jamil "James" Kantara

# Certificate of Compliance

Pursuant to TRAP 9.4(i)(3), I hereby certify that this brief contains 7,392 words as determined by the word processor function excluding exempted items as listed under TRAP 9.4 (i)(1).

BY: ___/s/ Wilfried Schmitz_____
Wilfried P. Schmitz
Texas Bar No. 17778700
17040 El Camino Real, Suite 400
Houston, Texas 77058
Phone: (281) 486-5066
Court_Documents@schmitzlaw.com
Attorney for Jamil "James" Kantara

# Certificate of Service

This is to certify that a true and correct copy of the foregoing *Appellee's Brief* has this 13th day of March, 2015, been sent pursuant to T.R.A.P. 9.5 (b)(1) by electronic mail, to the following:

Ashley Tomlinson
1800 Saint James Place, Suite 620
Houston, TX 77056
atomlinson@dalefamilylaw.com


Douglas York
3355 W. Alabama, Suite 100
Houston, Texas 77098
york@douglasyork.com


/s/ Wilfried Schmitz
Wilfried P. Schmitz

# APPENDIX 9

NO. 2011-46281

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| <span style="background:black">████████████</span> | § | |
| | § | HARRIS COUNTY TEXAS |
| | § | |
| | § | |
| | § | |
| CHILDREN | § | 311TH JUDICIAL DISTRICT |

**FILED**
Chris Daniel
District Clerk

**ORDER FOR COUNSELING**

APR 09 2013

Time: _____ Harris County, Texas
                              Deputy

The Court finds this case is brought under Title V of the Texas Family Code. The Court further finds it has authority under T.R.C.P. 204.4 on its own initiative to appoint a psychologist or counselor to make any and all appropriate mental examinations and/or treatment of ███████████████, ██████████████, and ████████ ████████ (hereinafter collectively referred to as "the children.").

IT IS ORDERED Jamil "James" Kantara is ORDERED to schedule appointments for the children with a licensed psychologist or counselor. IT IS FURTHER ORDERED the psychologist or counselor selected by Jamil "James" Kantara is authorized to interview, examine and evaluate and treat the children as the psychologist or counselor determines in her/his medical opinion is reasonable and necessary. The psychologist or counselor selected by Jamil "James" Kantara shall be a preferred provider under the parties' current health plan covering the children. Each party is ORDERED to pay one-half (1/2) of the psychologist or counselor's fees not covered by insurance within ~~five (5)~~ 30 days of presentment of the bill by the psychologist or counselor to that party.

IT IS ORDERED Jamil "James" Kantara and Mary Lynn Kantara Gerke shall cooperate with the psychologist or counselor and neither party shall harass, annoy, or intimidate the psychologist or counselor orally or in writing. IT IS FURTHER ORDERED each party shall transport the children to their scheduled appointments during their periods of possession unless otherwise directed by the psychologist or counselor.

IT IS ORDERED the psychologist or counselor shall not testify for either party in this matter and the records of the psychologist or counselor are protected from discovery

10

and/or disclosure pursuant to T.R.E. 510(b)(1)(2) unless otherwise ordered by this Court.

IT IS ORDERED neither party may communicate with, question, talk to, inquire about, or discuss any matters or issues with the children regarding counseling sessions other than times of appointments.

IT IS ORDERED neither party may communicate with, question, talk to, inquire about, or discuss any matters or issues with the psychologist or counselor except for scheduling appointments and payment of fees unless both parties are present, OR UNLESS THE COUNSELOR INITIATES AN INTERVIEW WITH THE PARTY.

SIGNED on _____ April 9 _____, 2013.

_____
JUDGE PRESIDING

11

AGREED TO AS TO FORM:

Wilfried P. Schmitz & Associates, P.C.

By: _W. P. Sch_____

Wilfried P. Schmitz
State Bar No. 17778700
17040 El Camino Real, Suite 400
Houston, Texas 77058
Phone: (281) 486-5066
Fax: (281) 486-2041
Attorney for Jamil "James" Jesus Kantara


By: _M. L. Kantara Gerke_____

Mary Lynn Kantara Gerke, Pro Se
707 Almond Pointe
League City, Texas 77573
Phone: (281) 332-8858
Fax: (281) 290-0004


Law Offices of Douglas Ray York, P.C.

By: _____

Douglas York
State Bar No. 24028243
3355 W. Alabama, Suite 100
Houston, Texas 77098
Phone: (713) 479-5555
Fax: (713) 586-5585
Amicus Attorney

12

# APPENDIX 10

## NO. 2011-46281

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
|  | § | |
| | § | |
| | § | HARRIS COUNTY TEXAS |
| | § | |
| | § | |
| | § | |
| | § | |
| CHILDREN | § | 311ᵀᴴ JUDICIAL DISTRICT |

### JAMIL "JAMES" KANTARA'S RESPONSE TO MARY LYNN KANTARA GERKE'S MOTION FOR RELIEF FROM THE ORDER TO CARRY SECONDARY INSURANCE AND FOR THE COURT TO SELECT A PREFERRED PROVIDER AND ORDER ▓▓▓▓▓▓ TO COUNSELING AND REQUEST FOR ATTORNEY FEES

COMES NOW Jamil "James" Kantara (hereinafter "James") and files his *Response to Mary Lynn Kantara Gerke's Motion for Relief From the Order to Carry Secondary Insurance and for the Court to Select a Preferred Provider and Order* ▓▓▓▓▓▓ *to Counseling and Request for Attorney Fees* and would show the Court the following:

1.      Mary Lynn Kantara Gerke (hereinafter "Mary") states in her Motion she was asked by this Court to research psychologists with experience in autism who are preferred providers on James' insurance plan. Mary states James has refused to consider other equally qualified health providers who are preferred providers on his insurance plan. James carefully reviewed the list provided by Mary. Some of the providers did not specialize in autism and others were not acceptable after review by James.

2.      Mary agrees in her Motion Dr. Michael Brandon is a good doctor but does not take their health insurance. She states in her November 13, 2012 email to James Dr. Brandon seems qualified, appears competent, and it is too late to change for ▓▓▓▓▓▓ sake. (See Exhibit "A"). ▓▓▓▓▓▓ has now been seeing Dr. Brandon for over six months and ▓▓▓▓▓▓ and Dr. Brandon have developed a strong and trusting relationship. It is in ▓▓▓▓▓▓ best interest for ▓▓▓▓▓▓ to continue counseling with Dr. Michael Brandon. The parties have been paying Dr. Brandon $75.00 per office visit and sharing that expense equally. Dr. Brandon has further offered to reduce his rate to $60.00 per session. From a financial standpoint, the yearly cost

15

between using Dr. Brandon versus using a preferred provider, after paying the $650.00 deductible, is almost equal. (See Exhibit "B").

3. Mary has requested the Court for relief from carrying secondary health insurance for the children. She states: "Ms. Kantara Gerke has tried to secure agreement through a Rule 11 agreement, however Mr. Kantara has refused to sign the agreement necessitating a hearing." The truth of the matter is James sent Mary a Rule 11 Agreement agreeing to release Mary from her obligation to maintain health insurance for the children provided she would reimburse James $191.27 per month to cover the cost of the children's health insurance. (See Exhibit "C"). To date, Mary has not responded.

4. For the above reasons, James prays the Court, after hearing arguments of counsel:

(i) Deny *Mary Lynn Kantara Gerke's Motion for Relief from the Order to Carry Secondary Insurance* or, in the alternative, order Mary Lynn Kantara Gerke to reimburse Jamil "James" Kantara the cost of the children's health insurance in the amount of $191.27 per month beginning May 10, 2013;

(ii) Deny Mary Lynn Kantara Gerke's *Motion for the Court to Select a Preferred Provider and Order* ███████ *to Counseling;* and

(iii) Award James Kantara his reasonable attorney fees.

Respectfully submitted,

WILFRIED P. SCHMITZ & ASSOCIATES, P.C.

By: _W. P. Schmitz_

Wilfried P. Schmitz
State Bar No. 17778700
17040 El Camino Real, Suite 400
Houston, Texas 77058
Telephone: (281) 486-5066
Fax: (281) 486-2041
Attorney for Jamil Kantara

-2-

16

## Certificate of Service

This is to certify a true and correct copy of the foregoing *Jamil "James" Kantara's Response to Mary Lynn Kantara Gerke's Motion for Relief From the Order to Carry Secondary Insurance and for the Court to Select a Preferred Provider and Order ▮▮▮▮▮ to Counseling and Request for Attorney Fees* was forwarded to all parties and/or counsel of record on this _9th_ day of May, 2013, via facsimile pursuant to T.R.C.P. 21(a), hand delivery and/or certified mail, return receipt requested to the following:

Mary Gerke, Pro Se
707 Almond Pointe
League City, Texas 77573
*Fax: (281) 290-0004*

Mr. Douglas York
Law Offices of Douglas Ray York, P.C.
3355 W. Alabama, Suite 100
Houston, Texas 77098
*Fax: (713) 586-5585*
Amicus Attorney

_W. P. Schmitz_
Wilfried P. Schmitz

-3-

**From:** Mary Lynn Kantara [marykantara@gmail.com]
**Sent:** Tuesday, November 13, 2012 11:42 AM
**To:** jameskantara@comcast.net; james.kantara@lmco.com
**Subject:** RE: Counseling for ▇▇▇▇▇.

Dr. Brandon seems qualified and appears competent. I think it is too late to change for ▇▇▇▇▇▇▇sake as you have already taken him for session. My concern is that once again, you did not follow the Court orders prior to putting all this in place.


-----Original Message-----
From: James Kantara [mailto:jameskantara@comcast.net]
Sent: Monday, November 12, 2012 2:54 PM
To: Mary Kantara Gerke; Mary Kantara Gerke; Mary Kantara Gerke; Mary Kantara Gerke
Cc: James Kantara
Subject: Re: Counseling for ▇▇▇▇▇

Do you object if Dr. Brandon is best for ▇▇▇▇▇ but not part of Aetna and/or American National's network?


From: Mary Kantara Gerke
To: James Kantara
To: James Kantara
Sent: Nov 12, 2012 9:45 AM
Subject: RE: Psychiatrist for ▇▇▇▇▇

I haven't met with Dr. Brandon yet. I'll let you know. I understand you are taking ▇▇▇▇▇ for an appointment with Dr. Brandon today. Is Dr. Brandon a preferred provider on the insurance?


From: James [mailto:JamesKantara@comcast.net]Sent: Monday, November 12, 2012 7:26 AM
To: 'Mary Kantara'; 'mary_kantara@hotmail.com'; 'mary.kantara@gmail.com'Cc: 'James'
Subject: RE: Psychiatrist for ▇▇▇▇▇

Dr. Brandon wants to meet ▇▇▇▇▇ today. His availability is at 5:15pm today at his Friendswood's office. I'd like to take ▇▇▇▇▇ so they can visit.


From: James [mailto:JamesKantara@comcast.net]Sent: Sunday, November 11, 2012 2:48 PM
To: 'Mary Kantara'; mary_kantara@hotmail.com; mary.kantara@gmail.comCc: 'James'
Subject: RE: Psychiatrist for ▇▇▇▇▇

What is your input and/or opinion about Dr. Brandon?

1

From: James [mailto:JamesKantara@comcast.net]Sent: Wednesday, November 07, 2012 6:35 PM
To: 'Mary Kantara'; 'mary_kantara@hotmail.com'; 'mary.kantara@gmail.com'Cc: 'James'
Subject: RE: Psychiatrist for ███████

This is Dr. Brandon's contact information:
150 W. Shadowbend Lane, Friendswood, TX 77546. He can be reached at
409-599-8177 or 281-338-2992. I established contact with him and I recommend you do the same
so we can make the decision to get ████████ started.

Please let me know.

James



From: James [mailto:JamesKantara@comcast.net]Sent: Wednesday, November 07, 2012 4:17 AM
To: 'Mary Kantara'; 'mary_kantara@hotmail.com'; 'mary.kantara@gmail.com'Cc: 'James Kantara'
Subject: RE: Psychiatrist for ████████

Dr. Michael Brandon is an experienced counselor that may be a valuable counselor for ████████ What opinion do you have and what information you may have about him and his credentials? Dr. Brandon has an office in Friendswood.

Please let me know.

James

Sent via BlackBerry from T-Mobile

2

19

**James**

| | |
|---|---|
| **From:** | Mary Lynn Kantara [marykantara@gmail.com] |
| **Sent:** | Wednesday, April 24, 2013 8:36 AM |
| **To:** | 'James'; 'James Kantara' |
| **Subject:** | RE: Dr. Brandon's hourly fees |

That's really nice of Dr. Brandon. However, I've done the research like the judge asked me to do and have found quite a few preferred providers in close proximity who have experience with autism, learning differences, anxiety and the like, who are licensed in psychology and some who are also licensed in school psychology. Most of the providers have the same contracted rate which results in a copay amount of less than $12 per visit.

I do not have the resources to not maximize the medical benefits for our kids. I have no problem staying with Dr. Brandon, so long as you are agreeable to follow the court order of paying the difference over the preferred provider copay.

For you to continue to pay Mr. Schmitz to oppose every opportunity for compromise is only detrimental to our kids and could easily pay for the very things you are opposing. It just doesn't make any sense and I really don't think it's being lost on the judge or the amicus anymore.

The reality is Mr. Schmitz is the only one happy about this litigation, has only encouraged extended conflict and is smiling all the way to the bank with money that could be invested in our kids and their future. That's so sad for our kids.

**From:** James [mailto:JamesKantara@comcast.net]
**Sent:** Tuesday, April 23, 2013 9:02 PM
**To:** 'Mary Lynn Kantara'; 'mary kantara'; 'mary kantara'
**Cc:** 'James'
**Subject:** Dr. Brandon's hourly fees

Mary,

Dr. Brandon offered to lower his counseling fees for ▉▉▉▉ from $75 to $60 per session. Not to mention that changing counselor for ▉▉▉▉ is not in our son's best interest since he has already built a trusting relationship with Dr. Brandon in the last six months of so, our yearly cost for Dr. Brandon's sessions will only be about $1,200 (for an estimated 20 sessions/year * $60/session). From a financial stand point, switching ▉▉▉▉ to an Aetna preferred provider will be subject to the upfront $650 deductible for the first 6 sessions or so before our out-of-pocket co-insurance cost goes into effect. This means that our cost savings for the year will be negligible to non-existent, even likely to end up being more cost effective for us than switching to an Aetna preferred provider.

This should greatly help address your financial concerns while keeping Dr. Brandon, the best counselor in the area for ▉▉▉▉.

James

# APPENDIX 11

Cause No. 2011-46281

P-2
TINUX

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT OF |
| ███████████ | § | |
| | § | 311th JUDICIAL DISTRICT |
| | § | |
| | § | |
| | § | |
| CHILDREN | § | HARRIS COUNTY, TEXAS |

*Temporary*

**ORDER ON MARY LYNN KANTARA GERKE'S MOTION FOR RELIEF FROM THE ORDER TO CARRY SECONDARY INSURANCE AND FOR THE COURT TO SELECT A PREFERRED PROVIDER AND ORDER ███████TO COUNSELING**

On June 3, 2013, the Court considered *Mary Lynn Kantara Gerke's Motion for Relief from the Order to Carry Secondary Insurance and for the Court to Select a Preferred Provider and Order █████to Counseling*. After reviewing the Motion and responses and hearing arguments, it is ORDERED:

Mary Lynn Kantara Gerke's *Mary Lynn Kantara Gerke's Motion for Relief from the Order to Carry Secondary Insurance* is granted in part and denied in part.

Mary Lynn Kantara Gerke is released from her obligation to maintain secondary health insurance after June 30, 2013. *The Court FINDS this constitutes a qualifying life event and is in the best interest of the children and IT IS ORDERED that effective June 30, 2013,* ~~Mary Lynn Kantara Gerke~~ the medical insurance maintained by Mary Lynn Kantara Gerke is ORDERED to reimburse James Kantara the sum of $76.40 per month for partial reimbursement of the cost of the children's health insurance premium with the first payment due on the 5th day of ~~the month following cancellation and cessation of deductions for the children's secondary health insurance with Ms. Kantara Gerke's employer~~ *July 1, 2013* and a like payment due on the 5th day of each month thereafter until further ordered of the Court.

Mary Lynn Kantara Gerke's *Motion for the Court to Select a Preferred Provider and Order ███████to Counseling* is granted in part and denied in part.

███████shall continue in counseling with Dr. Michael Brandon. The frequency, duration, and all other specifics of said counseling shall be per the recommendations of Dr. Michael Brandon. Each party is ORDERED to pay one-half (1/2) of the fees not covered by insurance within 30 days of presentment of the bill ~~by Dr. Brandon~~ to ~~that~~ *the other* party.

SIGNED on **JUL 0 8 2013** , 20___.

_____
JUDGE PRESIDING

Page 1 of 2

*[handwritten margin note]: Mary Lynn Kantara Gerke for the children of this cause shall be cancelled by her employer and IT IS FURTHER ORDERED that the deductions from Mary Lynn Kantara Gerke's earnings for said medical coverage for the children, only, shall cease.*

27

APPROVED AS TO FORM:

*M. L. Kantara Gerke*

Mary Lynn Kantara Gerke, pro se
707 Almond Pointe
League City, TX 77573
Tel: (281) 332-8858
Fax: (281) 290-0004

*W.?S.*

Mr. Wilfred Schmitz, Attorney for Jamil Kantara
State Bar No. 17778700
17040 El Camino Real, Suite 400
Houston, Texas 77058
Phone: 281-486-5066
Fax: 281-486-2041

Mr. Douglas York, Amicus Attorney
State Bar No. 24028243
3355 W Alabama, Suite 100
Houston, TX 77098-1863
Phone 713-479-5555
Fax 713-586-5585

28

# APPENDIX 12

# WILFRIED P. SCHMITZ & ASSOCIATES, P.C.

ATTORNEYS AT LAW

17040 EL CAMINO REAL, SUITE 400

HOUSTON, TEXAS 77058

Wilfried P. Schmitz
Attorney at Law

**B BOARD CERTIFIED**

Texas Board of Legal Specialization
Family Law

Telephone (281) 486-5066
Facsimile (281) 486-2041
e-mail wilfried@schmitzlaw.com

April 11, 2013

Ms. Mary Gerke                                              *Via Fax*
707 Almond Pointe
League City, Texas 77573

RE:     Cause No. 2011-46281; *In the Interest of J*▮▮▮▮▮▮▮▮▮▮▮▮
        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in the 311th Judicial
        District Court of Harris County, Texas.

Dear Ms. Gerke:

I am in receipt of your proposed Rule 11 Agreement. My client is agreeable to releasing you from your obligation of maintaining secondary health insurance on the children if you are willing to reimburse Mr. Kantara $191.27 per month for the cost of health insurance for the children on his insurance plan as shown on the attached.

If you are agreeable, please sign the attached Rule 11 Agreement.

Sincerely,

*W. P. Schmitz*

Wilfried P. Schmitz

WPS:me
Enclosures

cc: Mr. Douglas York

Exhibit "C"

21

| Lockheed Martin HealthWorks Medical Coverage during 2013 | Participant only (James) | | Participant + Children | | Extra Coverage Cost for children | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | Weekly Cost | | Monthly Cost | |
| Health Coverage | $ | 31.29 | $ | 67.58 | $ | 36.29 | $ | 157.26 |
| Dental | $ | 7.10 | $ | 14.20 | $ | 7.10 | $ | 30.77 |
| Vision | $ | 0.68 | $ | 1.43 | $ | 0.75 | $ | 3.25 |
| Total | $ | 39.07 | $ | 83.21 | $ | 44.14 | $ | 191.27 |

22

# APPENDIX 13

# Motions Filed by Mary Gerke

2011-11-10    Motion to Confer

2011-12-05    Mary's Motion for Temporary Orders

2011-12-15    Mary's Motion to Dismiss Motion to Compel

2011-12-21    Mary's Motion to Quash Mary Gerke's Deposition

2011-12-27    Mary's Motion to Compel Financial Information

2011-12-27    Mary's Motion to Compel RFD

2011-12-28    Mary's Motion for Children to Testify

2012-01-17    Mary's Motion to Quash Amended Deposition on Written Questions for Employment
Records

2012-01-18    Mary's Emergency Motion for Court Ordered Counseling

2012-01-23    Mary's Motion for Contempt on Financial Disclosure

2012-01-24    Mary's Motion to Extend Discovery and Continuance

2012-01-31    Mary's Motion to Compel Discovery

2012-02-13    Mary's Motion on Apportionment of Amicus Fees

2012-02-14    Mary's Motion for Temporary Orders

2012-02-19    Mary's Motion to Compel HIPPA Compliance

2012-02-29    Mary's Amended Motion to Compel Discovery

2012-04-09    Mary's Motion for Protective Order for Gerber

2012-04-09    Gerber's Motion for Protective Order

2012-04-09    Mary's Motion for Protective Order on Letter Rogatory

2012-04-12    Mary's Motion to Compel Date for Harrison to Complete Exam

2012-04-16    Mary's Motion for Appropriateness of Dr. Kennedy's Fees

2012-04-23    Mary's Motion to Compel Production to Hope Moser

2012-04-25    Mary's Motion to Compel Date Certain for Harrison's Deposition


EXHIBIT
R-90

| | |
|---|---|
| 2012-04-27 | Gerber's Motion to Deny Letter Rogatory |
| 2012-05-02 | Gerber's Motion for Special Exception to Motion for Spoliation |
| 2012-05-02 | Mary's Motion for Spoliation of Evidence |
| 2012-05-20 | Mary's Motion to Compel Fourth RFP and 2nd Set of Interrogatories |
| 2012-05-22 | Mary's Motion to Determine Appropriateness of Hope Moser's Fee |
| 2012-05-22 | Mary's Request for Entry Upon James' Property |
| 2012-06-07 | Mary's Objection to Filing Business Record of Dr. Harrison |
| 2012-06-12 | Mary's Motion to Compel Harrison's Production |
| 2012-06-25 | Mary's Emergency Motion to Stay Order |
| 2012-06-27 | Mary's Motion for Review of Harrison's Evaluation |
| 2012-07-08 | Mary's Motion to Exclude Harrison's Report and Testimony |
| 2012-08-05 | Mary's Motion to Strike Kassidi Turnpaugh |
| 2012-08-05 | Mary's Motion to Strike 2nd and 3rd Amended RFD and Amended Counterpetition |
| 2012-08-09 | Mary's Motion for James to Pay Amicus Fees |
| 2012-08-09 | Mary's Motion to Determine Scope of Confidentiality |
| 2012-08-12 | Mary's Motion to Strike Kit Harrison |
| 2012-08-12 | Mary's Amended Motion to Pay Amicus Fees |
| 2012-08-14 | Mary's Motion for Partial Summary Judgment |
| 2012-08-14 | Mary's Motion to Send Parties Back to Mediation |
| 2012-08-23 | Mary's Motion to Compel Production |
| 2012-08-23 | Mary's Amended Motion to Strike Kit Harrison |
| 2012-10-28 | Mary's Motion to Determine Arrearage of Medical Payments |
| 2012-11-05 | Mary's Motion to Examine Harrison's File |
| 2012-11-10 | Mary's Motion to Confer with the Children |
| 2011-11-22 | Mary's Motion to Recuse Wilfried P. Schmitz |

| | |
|---|---|
| 2012-11-29 | Mary's Motion to Compel |
| 2013-01-02 | Mary's Emergency Motion to Reset Pre-Trial Conference |
| 2013-01-22 | Mary's Emergency Motion to Enforce Visitation |
| 2013-01-14 | Mary's Motion for Witnesses Testifying Out of Order |
| 2013-01-14 | Mary's Motion to Strike Dr. Kennedy |
| 2013-01-14 | Mary's Motion to Strike Kit Harrison |
| 2013-01-14 | Mary's Motion to Strike Joanne Therese |
| 2013-01-14 | Mary's Motion to Strike Sherrie Meister |
| 2013-02-13 | Mary's Motion on Apportionment of Amicus Fees |
| 2013-05-14 | Mary's Motion for Sanctions |
| 2013-05-28 | Mary's Motion Prohibiting Homeschooling |
| 2013-05-28 | Mary's Amended Motion for Relief from the Order to Carry Secondary Insurance |